## STATE OF CONNECTICUT *v.* FRANKIE JENKINS (12465)

Landau, Schaller and Hennessy, Js.

Argued November 7, 1995—officially released June 11, 1996

*Thomas D. Nalband*, deputy assistant public defender, for the appellant (defendant).

*Mitchell S. Brody*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Stephen G. Preleski*, assistant state's attorney, for the appellee (state).

HENNESSY, J. The defendant, Frankie Jenkins, appeals from the judgment of conviction, rendered after a jury trial, of sale of cocaine by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), sale of cocaine in violation of General Statutes § 21a-277 (a) and possession of cocaine in violation of General Statutes § 21a-279 (a). The court combined the first two counts as one conviction and imposed a total effective sentence of ten years, execution suspended after five years, and three years probation.[1] On appeal, the defendant claims that the trial court violated his state and federal constitutional rights to a fair trial and to due process of law when it denied his motion to

---

[1] The judgment ordered that the mittimus reflect that the portion of the combined conviction that is based on the conviction of § 21a-278 (b) carries with it a five year mandatory minimum sentence.

bifurcate the trial to consider separately the issue of drug dependency. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. As part of an investigation of cocaine sales in and around a Bristol housing complex, the Bristol police department stationed a police officer in one of the apartments in the complex with a view of the area outside one of the buildings. The officer observed a paid police informant approach the defendant and purchase what was later determined to be 0.12 grams of crack cocaine from the defendant. After the jury found the defendant guilty of all three counts, this appeal followed.

In support of his claim that the trial court denied him a fair trial and deprived him of due process of law by denying his motion to bifurcate for trial the issue of drug dependency, the defendant argues that (1) pursuant to *McMillan* v. *Pennsylvania*, 477 U.S. 79, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986), drug dependency is purely a sentencing factor that is not an issue appropriately heard during trial, (2) *State* v. *Ferrone*, 96 Conn. 160, 113 A. 452 (1921), mandates a bifurcated hearing, (3) the failure to bifurcate improperly places the subject of punishment in the province of the jury, and (4) requiring the defendant to produce and persuade on the issue of drug dependency during his trial for sale of narcotics violates his rights to a fair trial and due process of law. Finally, the defendant argues that a new trial is necessary because he was prejudiced by the trial court's erroneous instructions on the issue of drug dependency, which he claims were confusing to the jury and contrary to existing law. We affirm the judgment.

## I

To address the defendant's arguments, we first examine the statutory scheme. General Statutes § 21a-278 (b) provides in pertinent part that "[a]ny person who

sells . . . [or] possesses with the intent to sell . . . any narcotic substance . . . *and who is not at the time of such action a drug-dependent person,* for a first offense shall be imprisoned not less than five years nor more than twenty years . . . ." (Emphasis added.) General Statutes § 21a-277 (a) provides in pertinent part that "[a]ny person who sells . . . [or] possesses with the intent to sell . . . a narcotic substance . . . for a first offense, shall be imprisoned not more than fifteen years . . . ." The statutes are virtually identical except that § 21a-278 applies exclusively to persons who are not drug-dependent. The design and effect of § 21a-278 (b) is to punish persons who are not drug-dependent and sell narcotics more severely than drug-dependent persons who sell narcotics. The legislature accomplishes that goal by providing for a five year mandatory minimum sentence for those convicted under § 21a-278 (b). A drug-dependent person can escape liability under § 21a-278 (b), and thus the five year mandatory minimum sentence, by proving that he was drug-dependent at the time of the offense. *State* v. *Januszewski,* 182 Conn. 142, 167, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981) (clear meaning of clause relating to absence of drug dependency to exempt particular class of persons from operation of statute). A drug-dependent person, could, however, be convicted under § 21a-277 (a), which does not consider drug dependency, but which also does not carry a mandatory minimum sentence. *State* v. *Paredes,* 35 Conn. App. 360, 372, 646 A.2d 234, cert. denied, 231 Conn. 925, 648 A.2d 166 (1994).

Our Supreme Court has decided whether not being drug-dependent is an element of § 21a-278 (b) and who bears the burdens of production and persuasion on the issue of drug dependency in a line of cases culminating with *State* v. *Hart,* 221 Conn. 595, 605 A.2d 1366 (1992). See *State* v. *Januszewski,* supra, 182 Conn. 142; *State*

v. *Brown*, 163 Conn. 52, 301 A.2d 547 (1972). In *State* v. *Januszewski*, supra, 168, our Supreme Court concluded that drug dependency is not an element of § 21a-278 (b), but is rather an exemption from liability pursuant to General Statutes § 21a-269. Section 21a-269 provides: "In any complaint, information or indictment, and in any action or proceeding brought for the enforcement of any provision of this part, it shall not be necessary to negative any exception, excuse, proviso or exemption contained in said section, and the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant." In *Januszewski*, our Supreme Court held that the defendant may constitutionally bear the burden of producing evidence of drug dependency. *State* v. *Januszewski*, supra, 168 (constitutionality of allocating to defendant burden of proof on this mitigating factor is without doubt after United States Supreme Court's decision in *Patterson* v. *New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 [1977]). The *Januszewski* court reasoned that "[a] defendant's drug dependency at the specific point of time in the past at which the offense occurred is certainly a matter personal to the defendant and peculiarly within his own knowledge. Moreover, the enactment of [§ 21a-269] appears to be an implicit recognition by the legislature of the difficulty created when any party is given the burden of proving the nonexistence of a certain fact, especially where . . . that fact is the nonexistence of a physical status of the defendant at one, usually distant, point prior in time." *State* v. *Januszewski*, supra, 167. The *Januszewski* court also likened the status of not being drug-dependent to the status of sanity, thus permitting the state to presume that a defendant was not drug-dependent at the time of the offense until the defendant makes drug dependency an issue. Id., 168; see *State* v. *DeJesus*, 236 Conn. 189, 204, 672 A.2d 488 (1996).

Finally, in *State* v. *Hart*, supra, 221 Conn. 607–11, our Supreme Court held that the defendant also bears the

burden of persuading the trier of fact, by a preponderance of the evidence, that he was drug-dependent at the time of the offense. The court relied on the United States Supreme Court decision in *McMillan* v. *Pennsylvania*, supra, 477 U.S. 79, to support its conclusion that placing this burden on the defendant is not unconstitutional. *State* v. *Hart*, supra, 611. "The federal due process clause does not bar state legislatures from placing the burden on a defendant to prove an affirmative defense or to prove that he or she falls within an exemption to liability for an offense." Id.

In summary, a person charged with sale of narcotics pursuant to § 21a-278 (b) is presumed not to have been drug-dependent, but may avoid liability under § 21a-278 (b) by proving by a preponderance of the evidence that he was drug-dependent at the time of the offense.

A

The defendant first argues that drug dependency is a sentencing factor and that *McMillan* requires a bifurcated hearing on that issue. The state argues that drug dependency is a defense akin to an affirmative defense, which does not require a bifurcated hearing. We are persuaded that *McMillan* does not require us to order a bifurcated hearing and that drug dependency is a defense akin to an affirmative defense.

*McMillan* v. *Pennsylvania*, supra, 477 U.S. 81, involved a Pennsylvania statute which imposed a five year mandatory minimum sentence if the defendant visibly possessed a firearm during the commission of certain crimes. The statute required that the trial court consider, during a sentencing hearing, the evidence adduced at trial in addition to other evidence offered by the parties at the hearing to determine by a preponderance of the evidence whether the defendant visibly possessed a firearm. Id. The defendants in *McMillan* objected to the procedure because they argued that

visible possession of a firearm constituted an element of the offense that should be proven beyond a reasonable doubt. Id., 83. The United States Supreme Court, relying on *Patterson* v. *New York,* supra, 432 U.S. 197, disagreed. *McMillan* v. *Pennsylvania,* supra, 84–85. The court held that visible possession of a firearm is not an element of the offense but merely a sentencing factor that establishes a mandatory minimum sentence within the sentencing range already established for the offense. Id., 87.

The defendant relies on *McMillan* to support his argument that the issue of drug dependency is a sentencing factor that requires a separate hearing. The mere fact that our Supreme Court relied on *McMillan* in *Hart* does not require this conclusion. *McMillan* stands for the proposition that a statutory provision requiring a mandatory minimum sentence is not necessarily an element of the offense and that a statute may reduce the burden of proof on that issue. *McMillan* v. *Pennsylvania,* supra, 477 U.S. 88. While the *Hart* court relied on *McMillan,* it did so for the proposition that the legislature may place the burden of proving drug dependency by a preponderance of the evidence on the defendant, not for the proposition that drug dependency is a sentencing factor.

Furthermore, the fact that the statute involved in *McMillan* required a separate hearing on the issue of a visible firearm does not mandate a separate hearing on the issue of drug dependency. The United States Supreme Court did not hold that a separate hearing was necessary; the court, in fact, did not even address that issue. It was the Pennsylvania legislature that required, through legislation, that the issue would be heard in a sentencing hearing. *McMillan* v. *Pennsylvania,* supra, 477 U.S. 81 n.1. Therefore, nothing in *McMillan* requires the conclusion that drug dependency is a sentencing factor or that the issue of drug dependency

requires a separate hearing. The defendant's argument is further weakened by the fact that the burden shifting approach originated with *Patterson* v. *New York*, supra, 432 U.S. 197, which did not involve a sentencing factor and did not require a separate hearing.

We conclude that the issue of drug dependency is more akin to the affirmative defense described in *Patterson* than the sentencing factor described in *McMillan*. *Patterson*, which served as the basis for the United States Supreme Court's decision in *McMillan*, involved New York's murder statute and the defense of extreme emotional disturbance. *Patterson* v. *New York*, supra, 432 U.S. 198. New York's murder statute essentially provides that a person is guilty of murder if with the intent to cause the death of another person he causes the death of such person. Id., 198–99 n.2. The statute affords a complete defense to murder if the defendant proves by a preponderance of the evidence that he acted under the influence of extreme emotional disturbance. Id. New York's manslaughter statute provides that a person is guilty of manslaughter if with the intent to cause the death of another person he causes the death of that person under such circumstances that do not constitute murder because he acted under the influence of extreme emotional disturbance. Id., 199 n.3. In affirming the statutory scheme, the United States Supreme Court made it clear that a state need not "prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of punishment." Id., 207. The court added that a state may place the burden on a defendant to prove "a factor that mitigates the degree of criminality or punishment . . . ." Id., 209.

The court also recognized that " '[t]he affirmative defense, intelligently used, permits the gradation of offenses at the earlier stages of prosecution and cer-

tainly at the trial, and thus offers the opportunity to a defendant to allege or prove, if he can, the distinction between the offense charged and the mitigating circumstances which should ameliorate the degree or kind of offense. . . . Absent the affirmative defense, the crime of murder or manslaughter could legislatively be defined simply to require an intent to kill, unaffected by the spontaneity with which that intent is formed or the provocative or mitigating circumstances which should legally or morally lower the grade of crime. . . . In sum, the appropriate use of affirmative defenses enlarges the ameliorative aspects of a statutory scheme for the punishment of crime, rather than the other way around—a shift from primitive mechanical classifications based on the bare antisocial act and its consequences, rather than on the nature of the offender and the conditions which produce some degree of excuse for his conduct, the mark of an advanced criminology.' " *Patterson* v. *New York*, supra, 432 U.S. 211–12 n.13, quoting *Patterson* v. *New York*, 39 N.Y.2d 288, 305–307, 347 N.E.2d 898, 383 N.Y.S.2d 573 (1976).

Connecticut's statutory scheme with respect to drug dependency and the difference between §§ 21a-277 (a) and 21a-278 (b) are similar to the extreme emotional disturbance defense involved in *Patterson* and the difference between murder and manslaughter. With both drug dependency and extreme emotional disturbance, proof by a preponderance of the evidence of the mitigating circumstance allows the defendant to escape liability for an offense that carries a greater punishment. Our laws increase the punishment for the sale of narcotics by a person who is not drug-dependent because the legislature has chosen to punish those who sell drugs for profit more than those who sell to sustain their own habits.[2] The exemption from liability in this case, drug

---

[2] The legislative history of § 21a-278 reveals this intent: "The intent of the bill is to give the state's attorney and the prosecuting attorney an opportunity

dependency, allows a defendant to avoid greater punishment for a crime that our legislature considers a greater evil. In both cases, even if the defense is successful, the defendant may be convicted of a crime that carries a less severe penalty.[3]

The Connecticut murder and manslaughter statutes[4] are virtually identical to those tested in *Patterson*. Both the Connecticut statutes and the New York statutes in *Patterson* place the burden on the defendant to prove the defense of extreme emotional disturbance by a preponderance of the evidence. See *State* v. *Raguseo*, 225 Conn. 114, 122, 622 A.2d 519 (1993). Connecticut, like New York, describes the extreme emotional disturbance defense as an affirmative defense. General Statutes § 53a-54a. While Connecticut's statutes use different nomenclature for the defenses of extreme emotional disturbance "affirmative defense" and drug dependency "exemption from liability," these defenses operate the same way. Both defenses excuse liability for an offense, although the elements of that offense

to charge an additional crime which does carry a harder sentence which goes towards imprisoning the person who is not drug-dependent and who is, in fact, selling drugs for a profit." 14 H.R. Proc., Pt. 10, 1971 Sess., pp. 4616–17.

[3] While the exact workings of §§ 21a-277 (a) and 21a-278 (b) and the New York murder and manslaughter statutes are not identical, their effect is the same. Both extreme emotional disturbance and drug dependency provide for a complete defense to the New York murder statute and § 21a-278 respectively. Unlike § 21a-277 (a), however, New York's manslaughter statute expressly exempts those guilty of murder from the operation of the statute. Therefore, a defendant can never be convicted of both murder and manslaughter. As is evident in this case, in Connecticut a defendant may be convicted of both §§ 21a-277 (a) and 21a-278 (b). *State* v. *Chicano*, 216 Conn. 699, 721, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991). The double jeopardy doctrine, however, prevents punishment for both offenses. Id. Therefore, the effect of the statutes is identical, in that in both cases a defendant may be punished only for one offense. Id.

[4] See General Statutes §§ 53a-54a and 53a-55.

have been satisfied.[5] Thus, even if the state proves the elements of murder, causing a death with intent to cause a death, the defendant can escape liability for murder by proving extreme emotional disturbance, which is not an element of the offense. Similarly, with respect to § 21a-278 (b), even if the state proves the elements of the offense, sale of narcotics, the defendant can escape liability under that statute by proving he was drug-dependent, also not an element of the offense pursuant to *State* v. *Hart,* supra, 221 Conn. 595. See *State* v. *Januszewski,* supra, 182 Conn. 168. In neither case will the defendant completely escape liability because he will likely be convicted either of manslaughter or under § 21a-277 (a). Therefore, we conclude that an exemption from liability on the issue of drug dependency is akin not only to the New York statutes tested in *Patterson,* but also Connecticut's statutory scheme for murder and manslaughter.

Furthermore, the use of different nomenclature for the two defenses is explained by the fact that the defenses were adopted as part of separate statutory

---

[5] Generally, defenses may be divided into five categories: (1) failure of proof defenses; (2) offense modifications; (3) justifications; (4) excuses; and (5) nonexculpatory defenses. 1 P. Robinson, Criminal Law Defenses (1984) § 21. An offense modification defense is one that exists even when all of the elements of the offense have been satisfied. Id., § 23. "[D]ifferent offense modifications . . . are supported by a variety of different rationales. Consent and extreme emotional distress, for example, serve to exculpate or to mitigate; they are based on a concern for the actor's culpability." Id., § 23 (a). Professor Robinson defines the extreme emotional disturbance defense as set forth in *Patterson,* as an offense modification. Id., § 27 (a). The issue of drug dependency can similarly be classified as an offense modification defense because it operates to exculpate a defendant even though all of the elements of the crime have been met. The defendant avails himself of the benefits of the defense by introducing an issue independent of what the state must prove to obtain a conviction pursuant to § 21a-278 (b). Id., § 27 (a) (affirmative defense does not negate any fact that state must prove to convict of murder but constitutes separate issue on which defendant is required to carry burden of persuasion); see *Patterson* v. *New York,* supra, 432 U.S. 206–207.

schemes. Affirmative defenses were adopted as part of our penal code, which is modeled after that of New York. *State* v. *Havican*, 213 Conn. 593, 601, 569 A.2d 1089 (1990). The exemption from liability statute, § 21a-269, is specific to those statutes pertaining to controlled substances. Section 21a-269 expressly applies to General Statutes §§ 21a-240 through 21a-283. Sections 21a-269 and 21a-277 (a) were not adopted with our penal code, but in a bill enacted specifically to address the drug abuse problem in the state.[6] Therefore, we do not consider it significant that our legislature chose to use two different names for a defense that operates similarly but in two different arenas. We conclude that the defense of drug dependency is substantially similar to the defense of extreme emotional disturbance, and that *McMillan* v. *Pennsylvania*, supra, 477 U.S. 79, does not require a bifurcated hearing.

B

The defendant also argues that the issue of drug dependency is a sentencing factor pursuant to *State* v. *Ferrone*, supra, 96 Conn. 160, and, therefore, that *Ferrone* mandates a bifurcated hearing on the issue of drug dependency. In *Ferrone*, the information charged the

---

[6] The legislative history of the bill reveals that the laws pertaining to controlled substances were enacted separately from our penal code to address specifically the problem of drug abuse: "As characterized by the many people who have sponsored the bill, it represents a total approach to a growing and very important problem, rather than a piecemeal type of approach, which we have seen to date on the state and federal levels. I submit that this is very significant, Mr. Speaker. This total approach consists of combining in one package, five different but equally important responsibilities and functions. Regulation, enforcement, education, research and treatment are each to be performed by appropriate state departments working with each other and the other, the general coordinating activity of a drug advisory council made up of the various state commissioners, representatives of the medical, psychiatric and pharmaceutical professions as well as the general populace. This bill comes to us as a product of over a year's extensive activity." 12 H.R. Proc., Pt. 8, 1967 Sess., pp. 3657–58, remarks of Representative William E. Strada, Jr.

defendant with possession of burglary tools and also alleged that the defendant had twice before been convicted, sentenced and imprisoned in a state prison. Id., 171. The state alleged the previous convictions because of a statute that provided that "when any person who is to be sentenced after conviction of a crime 'shall have twice before been convicted, sentenced and imprisoned in a state prison or penitentiary, the court shall sentence said person to a maximum of thirty years.' " Id., 172. The defendant objected to the admission of testimony at trial regarding his prior convictions and to the submission of the information to the jury. Id., 171–72.

The *Ferrone* court held that it was improper for the state to proffer evidence of the prior convictions to the jury and ordered a bifurcated hearing on the issue. Id., 175. First, the court noted that the information presented two separate issues: (1) whether the defendant was guilty of the underlying crime; and (2) whether the defendant had twice before been convicted, sentenced and imprisoned. Id., 172–73. The court reasoned that the issue of prior convictions relates solely to the penalty and "does not involve or state any other or different crime from that first stated." Id., 173. The court further reasoned that "the issue of former convictions does not relate to the issue of the commission of the specific crime alleged, and for which only the accused is to be tried; and the fact of former convictions does not tend in any way to prove the commission of the crime charged." Id., 174.

Our Supreme Court recently revisited the *Ferrone* decision in *State* v. *Jones*, 234 Conn. 324, 662 A.2d 1199 (1995). The defendant in *Jones* was charged with having committed a capital felony in violation of General Statutes § 53a-54b (3). Section 53a-54b (3) provides that a person is guilty of a capital felony if he or she commits murder and has previously been convicted of inten-

tional murder or of murder committed in the course of the commission of a felony. At trial, the defendant moved that the court preclude admission of his prior murder conviction until after the jury first determined whether he had committed the murder for which he was on trial. Id., 334. The trial court denied the motion. Id., 337. Relying on *Ferrone*, our Supreme Court reversed the conviction and ordered a new trial. Id., 337–49.

The court reasoned that subdivision (3) of § 53a-54b is a sentence enhancer and "is classified as capital felony for the same reason we have previous offender statutes—to increase the sentence as a deterrent to recidivism. The prior murder conviction, although an element of subdivision (3), is not otherwise related to the current murder." *State* v. *Jones*, supra, 234 Conn. 341. The court distinguished subdivision (3) from other subdivisions of the same statute, which the court concluded were not simply sentence enhancement provisions, but were designed to define different crimes. Id., 340–41. The court noted that many of the other subdivisions involve crimes that are capital felonies because they involve more atrocious types of murder: "Murder during a kidnapping (subdivision [5]), or sexual assault (subdivision [7]), murder of a peace officer (subdivision [1]), murder of two or more people (subdivision [8]), murder for pecuniary gain (subdivision [2]), and murder of a person following ingestion of drugs provided for profit by the defendant (subdivision [6]) . . . ." Id., 341.

The court further distinguished subdivision (3) from the other subdivisions of the statute by looking to the relationship of the elements. Id., 342. The court noted that subdivision (3) does not require the state to prove that the defendant's prior murder conviction is related to the present murder, whereas the other subdivisions use phrases such as "during the course of" and "before

such person is able to return or be returned to safety" which connect the elements of the offense. Id., 342 and n.11.

We disagree with the defendant's argument that drug dependency is a sentencing factor similar to the previous conviction involved in *Ferrone* and as such requires a bifurcated hearing. In *Jones* we learned that *Ferrone* is not applicable to statutes that define a more atrocious or different type of crime. *State* v. *Jones*, supra, 234 Conn. 340–41. Our legislature has defined a different, more heinous type of narcotics sale by providing that § 21a-278 (b) applies exclusively to persons who are not drug-dependent.[7] Furthermore, both *Ferrone* and *Jones* involved a sentencing provision unconnected to the crime. Section 21a-278 (b) requires that the seller not be drug-dependent at the time of the sale. This requirement buttresses the legislative effort to distinguish the offense by those who sell to support their habit and those who sell for profit.

For the foregoing reasons, we conclude that drug dependency is not a sentencing factor within the ambit of either *Ferrone* or *Jones* and does not require a bifurcated hearing.

C

The defendant next claims that the lack of a bifurcated hearing unconstitutionally places the subject of punishment in the province of the jury. This argument relies on the defendant's assumption that the issue of drug dependency is a sentencing factor. Because we conclude that the issue of drug dependency is not a sentencing factor, but is more akin to an affirmative defense, this argument necessarily fails.

D

The defendant's final argument in support of a bifurcated hearing also relies on *Ferrone*. The defendant

[7] See footnote 2.

argues that requiring a defendant to offer evidence on the issue of drug dependency (1) is equivalent to requiring him to testify against himself, and (2) pollutes the objectivity of the jury. The defendant claims that it is unfair to require a defendant to place illegal drugs within his ambit while attempting to defend himself on a sale of narcotics charge. This situation, the defendant argues, forces him to choose between offering evidence regarding drug dependency, which may prejudice the jury, and remaining silent on the issue of drug dependency.

In defending a charge of sale of narcotics pursuant to § 21a-278 (b), the defendant may defend on either or both of two grounds: (1) that the state has failed to meet its burden on one of the elements of the offense; or (2) that he was drug-dependent. If the state fails to prove the elements of the offense, the defendant will escape liability under § 21a-278 (b). If the state proves the elements of § 21a-278 (b), the defendant may still escape liability under § 21a-278 (b) by proving that he was drug-dependent.

The mere fact that the defendant is faced with a difficult choice regarding whether to present a seemingly inconsistent defense does not mandate a bifurcated hearing. Our Supreme Court addressed a similar issue in *State* v. *Suggs*, 209 Conn. 733, 745, 553 A.2d 1110 (1989). In *Suggs*, the defendant demanded that the state choose to try him for either sexual assault in a cohabitating relationship, General Statutes § 53a-70b (b), or sexual assault in the first degree, General Statutes § 53a-70, to which cohabitation is a defense. See General Statutes § 53a-67 (b). The defendant contended that because cohabitation is an affirmative defense to sexual assault in a noncohabitating relationship, the state, by charging the defendant with both counts in one trial, placed the defendant in a position of raising an affirmative defense to one count that would not only

assist the state in establishing an element of the other count, but also undermine his efforts to challenge the state's proof on that element. *State* v. *Suggs*, supra, 739, 744. The defendant added that a joint trial on these counts forced him to choose between "forgoing his right to present the affirmative defense of cohabitation to the § 53a-70 count, or exercising that right by producing evidence of cohabitation and thereby assisting the state in proving an essential element of the § 53a-70b count." Id., 741.

The court held that "a defendant's voluntary decision to maintain mutually inconsistent defenses" does not result in a due process violation that requires separate trials. *State* v. *Suggs*, supra, 209 Conn. 745. The court added that any evidence that the defendant may offer on the issue does not relieve the state of its burden to prove the elements of the crime beyond a reasonable doubt, and that the trial court had made that clear in its charge to the jury. Id., 745, 747.

The defendant in this case argues that his assertion of the drug dependency defense forced him to proffer evidence that brought illegal narcotics within his ambit and thus assisted the state in proving the elements of sale of narcotics. We conclude, consistent with *Suggs*, that the defendant's voluntary choice to pursue these seemingly conflicting defenses does not require bifurcation. In fact, the circumstances of this case present a stronger argument against a separate hearing than in *Suggs*, because, unlike in *Suggs*, evidence of the defense in this case is not direct evidence of an element of another crime with which the defendant was charged.

Furthermore, the trial court clearly instructed the jury that it was not to use evidence of drug dependency as evidence that the defendant was guilty of the sale

of narcotics.[8] The trial court's instruction also mitigated any prejudice to the defendant that might have resulted from the jury's knowledge of the defendant's involvement in prior misconduct. See *State* v. *Sheets*, 40 Conn. App. 328, 334, 671 A.2d 366 (1996).

"The decision of which defenses to present to a jury in a criminal trial is properly left to the judgment and wisdom of the criminal defendant and his attorney. The due process clause of the Fourteenth Amendment does not guarantee one charged with a crime a separate audience for each and every defense he or his counsel may devise. As with many other decisions made prior to and during trial, a wrong choice of defenses may have severe adverse consequences. However, due process is not implicated simply by the fact that such a choice is foisted upon the criminal defendant." *Gilreath* v. *Robinson*, 544 F. Sup. 569, 575–76 (1982).

Accordingly, we conclude that the trial court did not improperly deny the defendant's motion to bifurcate for trial the issue of drug dependency.

## II

The defendant's final claim focuses on the trial court's charge. At one point during the charge, the trial court

[8] The trial court gave the following limiting instruction: "Now, another word about the evidence of drug dependency offered by the defendant. You must not draw any inference from any evidence offered by the defendant to show he was drug-dependent to determine if he was guilty of the charge of sale of cocaine. As to whether or not he sold cocaine, the state must still prove the elements of sale that I've previously described beyond a reasonable doubt before you can find the defendant guilty of sale regardless of any evidence offered by him to show he was drug-dependent. Remember on voir dire, when you were questioned individually as to whether or not you could be a fair and impartial juror, you were asked in essence whether you believe, A, a person who is a drug user was therefore a drug seller, and, B, whether a seller was therefore a user, and you answered no to both questions, in effect agreeing that the two are separate and distinct. So, again I caution you that if you believe the defendant offered evidence to show he was drug-dependent, you must not use that evidence to draw an inference that he was, therefore, a seller. You must decide whether he was a seller solely on

improperly stated that the absence of drug dependency was an element of the crime of sale of narcotics to be proven beyond a reasonable doubt. The state contends that viewing the charge as a whole it was not reasonably possible that the jury was misled by this misstatement. We agree with the state.

"An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension. . . . In either instance, [t]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995).

In charging on the issue of drug dependency, the trial court stated the following: "If you find that the defendant knowingly sold a substance and that substance was a narcotic substance and at the time of the sale the defendant was not drug-dependent, as I have defined all those terms for you, you should find him guilty. If you do not find all these elements proven

___

the basis of whether the state has proved the elements of sale by the defendant beyond a reasonable doubt as I have explained those elements to you."

beyond a reasonable doubt, however, you should find him not guilty." The trial court referred to the issue of not being drug-dependent as an element that must be found beyond a reasonable doubt. Drug dependency is not an element of the offense, but is an exemption from liability which the defendant must prove by a preponderance of the evidence. *State* v. *Hart,* supra, 221 Conn. 607–11. This misstatement is the only statement that the defendant attacks. Having determined that the trial court made an improper statement concerning the drug dependency defense, we look to the charge as a whole with respect to that issue to determine whether it is reasonably possible that this single misstatement misled the jury.

Prior to the misstatement, the trial court charged the following: "The statute [§ 21a-278 (b)] sets up two elements, both of which must be established beyond a reasonable doubt in order to justify a finding of guilty. First, that the substance was a narcotic substance, and, two, that the defendant knowingly sold it. . . . Now, the absence of drug dependency by the defendant, in other words, being a non drug-dependent person, is not an element that the state has to prove. Drug dependency is a fact which, if proven, exempts the defendant from this statute. The burden of proof, therefore, is on the defendant to prove by a preponderance of the evidence that he was drug-dependent at the time of the alleged sale." Shortly thereafter, the trial court made the misstatement previously quoted.

Immediately after the misstatement, the trial court charged as follows: "Now, as I've just said on the issue of whether the defendant was drug-dependent at the time of the alleged offense, if it is proved that he was drug-dependent, he is exempt under the statute. However, as I said, the defendant, not the state, but the defendant has the burden of proving the drug dependency by a fair preponderance of the evidence. Now,

preponderance of the evidence is a lesser burden than beyond a reasonable doubt. The state must prove the defendant's guilt beyond a reasonable doubt. The defendant, on the other hand, must prove his drug dependency only by a preponderance of the evidence. Now, preponderance of the evidence means this: He must prove the facts of drug dependency by the better and weightier of the evidence. You will take all of the evidence on the issue of drug dependency that has been offered and consider the various circumstances involved. You will weigh them and balance them. And then if you find the evidence fairly preponderates in favor of the defendant on this issue, he will have proved he was drug-dependent. If, on the other hand, it does not fairly preponderate in his favor, if the better and weightier evidence does not seem to you to establish his drug dependency, then he has failed in his burden to prove the facts upon which he relies. And if you find the evidence on this issue evenly balanced so that you cannot say it inclines one way or another, then your decision on this question must be against the defendant because it is for him to prove it and not for the state to disprove it. Put another way, if you balance the evidence on a scale and the part of the scale for the evidence in his favor on this issue is even slightly higher than the part of the scale against his position, then he has proved his point. If, on the other hand, his side of the scale is equal to or even slightly below the other side, you must find against him on this issue. On a percentage basis, if his evidence was worthy of anything over 50 percent, you must find for him. If it is for 50 percent or less, you must not find for him."

Last, the court charged: "[I]f you believe the state has proven the elements of sale beyond a reasonable doubt and that the defendant has not proven he was drug-dependent by a preponderance of the evidence, then you must find him guilty of the first count, sale

of a narcotic substance by a non drug-dependent person. If, on the other hand, the state has not proven the elements of sale beyond a reasonable doubt or if the state has proven the elements of sale beyond a reasonable doubt but the defendant has proven by a preponderance of the evidence that he was a drug-dependent person at the time of the alleged sale, then you must find him not guilty of the first count, sale of a narcotic by a non drug-dependent person."

Initially, the trial court correctly charged the jury, then made the isolated misstatement, and then correctly charged the jury at considerable length on the drug dependency defense. The jury charge as a whole made it clear that drug dependency is not an element of the crime, and that the defendant bears the burden of persuading the jury on that issue by a preponderance of the evidence. Accordingly, we conclude that it was not reasonably possible that the jury was misled.

The judgment is affirmed.

In this opinion the other judges concurred.