STATE OF CONNECTICUT *v.* KETRIC BARNES
(AC 31348)

DiPentima, C. J., and Bear and Stoughton, Js.

Argued December 1, 2010—officially released March 1, 2011

*Daniel J. Foster*, special public defender, for the appellant (defendant).

*Melissa Patterson*, deputy assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, and *Maria E. Sous*, assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Ketric Barnes, appeals from the judgments of conviction, rendered after a jury trial, of criminal possession of a firearm in violation of General Statutes § 53a-217, possession of narcotics in violation of General Statutes § 21a-279 (a), two counts of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and two counts of sale of narcotics in violation of General Statutes § 21a-277 (a).[1] On appeal, the defendant claims that the court improperly (1) denied his motion to dismiss the charges after the state failed to provide him with certain evidence, which had been lost or misplaced by the West Haven police department, and (2) denied his motion to sever the possession of narcotics charge from the sale of narcotics charges. We affirm the judgments of the trial court.

The following facts, as reasonably could have been found by the jury, are relevant to our discussion of the claims on appeal. The West Haven police department conducted two controlled drug buys using an informant, Grace Licausi, to purchase crack cocaine from the

---

[1] For sentencing purposes, the court merged the defendant's convictions of sale of narcotics and sale of narcotics by a person who is not drug-dependent, sale of narcotics being a lesser offense included within sale of narcotics by a person who is not drug-dependent. See *State* v. *Ray*, 290 Conn. 602, 634, 966 A.2d 148 (2009) (§ 21a-277 [a] is lesser offense included within § 21a-278 [b]).

defendant. On March 14, 2008, after meeting with police and getting a prerecorded $20 bill from them for use in the drug purchase, Licausi went to the defendant's apartment, located at 22 West Spring Street, and made the first controlled buy from the defendant. In exchange for the $20, the defendant gave Licausi two bags of crack cocaine, which she later turned over to the police.

On March 26, 2008, Licausi again went to the defendant's apartment with a prerecorded $20 bill to make another controlled buy of crack cocaine from the defendant. Again, in exchange for the prerecorded $20 bill, the defendant gave Licausi two bags of crack cocaine. On the basis of these controlled buys, the police secured and, on April 4, 2008, executed a search warrant for the defendant's apartment.

Upon searching the defendant's apartment, the police discovered a loaded nine millimeter handgun in the defendant's bedroom, as well as cocaine and marijuana. Because the defendant had two broken legs and was only mobile with the assistance of crutches, the police carried him down the stairs to an awaiting police vehicle. The defendant was charged in three separate informations. The amended long form informations charged as follows: in docket number CR-08-65953-S, the defendant was charged with criminal possession of a firearm and possession of narcotics; in docket number CR-08-65954-S, he was charged with sale of narcotics by a person who is not drug-dependent and sale of narcotics; and, in docket number CR-08-65955-S, he was charged with sale of narcotics by a person who is not drug-dependent and sale of narcotics. After a jury trial, he was convicted on all counts and sentenced to a total effective term of twenty years imprisonment, execution suspended after ten years, with five years probation.[2]

---

[2] See footnote 1 of this opinion.

This appeal followed. Additional facts will be set forth as necessary.

## I

The defendant first claims that the court improperly denied his motion to dismiss the charges after the state failed to provide him with certain evidence, which had been lost or misplaced by the West Haven police department.[3] The defendant explains that the police had audio recordings of Licausi's controlled buys from the defendant but that they lost the recordings.[4] He argues that under the test enunciated in *State* v. *Asherman*, 193 Conn. 695, 724, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985), the loss of this evidence violated his state constitutional right to due process.[5] The state argues that the defendant is speculating on what might have been on the lost recordings and that the tapes were immaterial in light of the evidence that was presented to the jury. We conclude that the court properly concluded that the defendant's right to due process of law under article first, § 8, of the state constitution was not violated by the loss of evidence and, therefore, that the court did not abuse its discretion in denying the defendant's motion to dismiss.

The record reveals the following additional facts. During each of Licausi's controlled buys from the defendant, she was fitted with a transmitter so that Officer

[3] At oral argument before this court, the defendant clarified that on this claim of the appeal, he is seeking to have dismissed only the charges involving the sale of narcotics and that he is seeking a new trial on the remaining charges.

[4] The defendant recites in his brief that Licausi admitted that she had interfered with the audio surveillance by the placement of the device in her "big goose down jacket . . . ."

[5] Although the defendant does not cite to a specific provision of the state constitution, we assume that he is referring to his right to due process of law under article first, § 8, of the Connecticut constitution.

Mark D'Amico could monitor her conversations. Although recordings were made of these conversations, the tapes were lost by the police before trial. Neither the defendant nor the state ever had an opportunity to listen to the recordings, and they were not aware that the recordings were missing until less than one week before the start of evidence. On March 10, 2008, the first day of trial, the defendant moved to dismiss the charges against him on the ground that his state due process rights had been violated by the loss of this evidence. After hearing argument, the court stated that it would permit the defendant wide latitude in his cross-examination of Licausi and D'Amico regarding the recordings and that it would permit counsel to file a memorandum of law if he wanted a further remedy.[6] The next day, the defendant submitted a memorandum of law in support of his motion to dismiss, and the state filed an opposition. After hearing oral argument, the court conducted a balancing test in accordance with *State* v. *Asherman*, supra, 193 Conn. 724, and concluded that it was unknown exactly what was on the missing recordings or whether there was anything favorable to the defendant and that the defendant had failed to demonstrate that he would have conducted cross-examination in a different manner or that his presentation of evidence would have been different if the recordings

---

[6] Specifically, the court stated: "This is what I'll do, given the timing of the motion and the timing of the disclosure [that the evidence was lost], I'll allow latitude . . . for cross-examination of any of the state's witnesses . . . including . . . D'Amico as to where the tape is, what efforts—and what was done with it. You can cross-examine until your heart's content, until you [find] out when the tape was last seen, if anybody listened to it, etc., and then I'll entertain—you can file some authorities with this [motion to dismiss] if you want any further remedy, and the same with the state. Those should be filed as soon as possible. But in terms of the missing evidence now, given the status of the case, we've already started the trial, but we're still on the first witness and you're still on cross-examination. So, as I say, you can cross-examine this witness and establish . . . what happened to the tape recording."

were available. Additionally, the court found that the defendant had not demonstrated any bad faith on the part of the police. Accordingly, the court denied the defendant's motion to dismiss, concluding that the defendant had not demonstrated any prejudice that could not be cured by the wide leeway given in cross-examination.

On appeal from the court's denial of a motion to dismiss on the ground of failure to preserve potentially exculpatory evidence, we employ a plenary standard of review to the court's determination of whether the defendant's state due process rights were violated. See *State* v. *Nunez*, 93 Conn. App. 818, 823, 890 A.2d 636 (2006); see also *State* v. *Morales*, 39 Conn. App. 617, 623, 667 A.2d 68, cert. denied, 235 Conn. 938, 668 A.2d 376 (1995). We then employ an abuse of discretion standard when considering the propriety of the court's action on the defendant's motion to dismiss. See generally *State* v. *Morales*, 232 Conn. 707, 729, 657 A.2d 585 (1995).

The United States Supreme Court, employing a federal due process clause analysis, explained that when confronted with a claim that the state failed to preserve evidence that "could have been subjected to tests, the results of which might have exonerated the defendant"; *Arizona* v. *Youngblood*, 488 U.S. 51, 57, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988); "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id., 58.

In *State* v. *Morales*, supra, 232 Conn. 720, however, our Supreme Court determined that article first, § 8, of the Connecticut constitution requires a balancing test rather than a showing of bad faith: "We refer to this test as the *Asherman* test. Although the United States Supreme Court in *Youngblood* held that due process

under the federal constitution does not require a trial court to apply such a balancing test, we are persuaded that due process under our state constitution does." Id. "[T]he trial court must employ the [*Asherman*] balancing test, weighing the reasons for the unavailability of the evidence against the degree of prejudice to the accused." (Internal quotation marks omitted.) *State* v. *Joyce*, 243 Conn. 282, 301, 705 A.2d 181 (1997), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998).

In *State* v. *Asherman*, supra, 193 Conn. 724, our Supreme Court outlined the test factors to be employed in conducting a due process analysis under our state constitution when a defendant claims that the state failed to preserve evidence: The factors include "the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, the reason for its nonavailability to the defense and the prejudice to the defendant caused by the unavailability of the evidence."

When the trial court agrees that the defendant's state due process rights have been violated by the failure of the police to preserve potentially exculpatory evidence, however, "the court is not required to dismiss the charges, even if the state's failure to preserve evidence has adversely affected the defendant's right to a fair trial. . . . The trial court is not faced with the Hobson's choice of either dismissing all criminal charges or denying any relief whatsoever to a criminal defendant who possibly has been prejudiced as a result of the negligence of the state. . . . Rather, the trial court may fashion another remedy that appropriately ameliorates or offsets the prejudice that the defendant has suffered as a result of the unavailability of the evidence. . . . Put simply, a trial court must decide each case depending on its own facts, assess the materiality of the unpreserved evidence and the degree of prejudice to the accused,

and formulate a remedy that vindicates his or her rights.
. . . The ultimate question for the trial court in such a
case is: What remedy best serves the interests of jus-
tice?" (Citations omitted.) *State* v. *Morales*, supra, 232
Conn. 729.

In the present case, the defendant contends that a
proper application of the balancing factors from *Asher-
man* requires that the defendant's convictions on the
sales related charges be reversed and judgment ren-
dered in his favor. Additionally, he asks that the
remaining convictions be reversed and that he be
granted a new trial on those charges. Applying the *Ash-
erman* balancing factors, we conclude that the defen-
dant's right to due process of law under article first,
§ 8, of the Connecticut constitution was not violated
by the loss of the recordings.

The first factor of the balancing test involves the
materiality of the missing evidence. *State* v. *Asherman*,
supra, 193 Conn. 724. The defendant argues: "With
respect to the materiality of the evidence at issue, the
tapes were critical evidence of the linchpin of the state's
entire case, namely, its claims that [the defendant] sold
drugs to the informant on the dates in question. Indeed,
it seems beyond dispute that, had the tapes not been
lost, they would have been by far the most important
evidence in the entire case." He further argues: "The
tapes were the only piece of evidence that could have
demonstrated to the jury whether the informant's ver-
sion of events or [the defendant's] version of events
was true." We conclude that the tapes were not of
significant materiality to the case.

"The measure of materiality is whether there is a
reasonable probability that, had the evidence been dis-
closed [or available] to the defense, the result of the
proceeding would have been different." (Internal quota-
tion marks omitted.) *State* v. *Joyce*, supra, 243 Conn.

301. In this case, the defendant argues repeatedly about what the tapes "could have" demonstrated. He argues that the tapes were critical to the *state's case* and that they were the only piece of evidence that "could have" proven the defendant's guilt or innocence. However, this argument ignores the eyewitness informant, Licausi, who testified that it was the defendant who had sold her crack cocaine.[7] On the basis of Licausi's testimony, which the jury must have credited, the jury found the defendant guilty. The defendant points us to nothing in the record that would demonstrate that the results of the proceedings would have been different had the tapes been available. The informant testified that the quality of the recording was questionable because she had placed the device in the pocket of her goose down jacket. Our decision, however, would be the same even if the quality of the recordings of the controlled buys were pristine. The defendant's mere speculation that the tapes could have been beneficial *or not* simply does not meet the standard necessary to prove materiality.

The next factor in the balancing test requires us to examine the likelihood of mistaken interpretation of the missing recordings by witnesses or the jury. See *State* v. *Asherman*, supra, 193 Conn. 724. The defendant argues that the jury was left to conclude that the tapes conclusively supported the state's charges that he sold crack cocaine to Licausi. We disagree.

In this case, the court specifically told defense counsel that he would be provided wide leeway in his cross-examination of D'Amico and Licausi concerning the recordings and that he could submit a memorandum of law if he thought further relief was warranted. Although he continued to argue that the case should be dismissed, he never asked the court for a missing

---

[7] The defendant also testified at the trial.

evidence instruction; see, e.g., *State* v. *McRae*, 118 Conn. App. 315, 322–23, 983 A.2d 286 (2009); or an instruction regarding adverse inference. Cf., e.g., *State* v. *Marra*, 295 Conn. 74, 83 n.5, 988 A.2d 865 (2010). The court gave the defendant a full and fair opportunity to question D'Amico and Licausi to ascertain fully what happened during the controlled buys and what happened to the recordings thereafter. D'Amico testified that he listened to Licausi's conversations during the controlled buys, but the defendant never asked him to state what he had heard or whether he could hear the defendant through the transmitter. Additionally, our review of the record reveals that the defendant used the missing tapes as a means of attempting to raise reasonable doubt in the mind of the jury during closing argument by arguing that the missing tape would have revealed the "whole story" and by calling into question the reason for its nonproduction. We conclude that it was not reasonably likely that the jury had a mistaken interpretation of the missing recordings.

The third balancing factor involves the reason for the nonavailability of the recordings, which includes whether there was bad faith on the part of the police or the state. *State* v. *Asherman*, supra, 193 Conn. 724. The defendant concedes that there was no evidence of bad faith in this case.

The fourth and final balancing factor is whether, and how much, the defendant was prejudiced by the unavailability of the evidence. Id. The defendant argues that the loss of the tapes was critical: "Not only were the tapes the most important evidence in the case in and of themselves, they would also have enabled [the defendant] to effectively cross-examine D'Amico and, more importantly, the informant." The state argues that the defendant was not prejudiced by the missing recordings because the state did not use anything from those recordings to support its prosecution of the defendant,

pointing out that it had a firsthand account, via Licausi, of what had happened. Furthermore, it argues, the defendant never asked for an adverse inference instruction, and he argued to the jury that the missing recordings would have provided "the truth" about what had happened. Accordingly, the state argues, the defendant cannot demonstrate prejudice. We conclude that the court remedied any potential prejudice that may have been present.

"It is axiomatic that [a criminal] defendant is entitled fairly and fully to confront and to cross-examine the witnesses against him." (Internal quotation marks omitted.) *State* v. *Kelsey*, 93 Conn. App. 408, 421, 889 A.2d 855, cert. denied, 277 Conn. 928, 895 A.2d 800 (2006). In *Kelsey*, the defendant claimed that his constitutional rights had been violated because two knives and a piece of bloodstained cardboard, which the defendant alleged were exculpatory, but which were not proven to have been relevant to the charged homicide, had been lost by the police. Id., 418–19. The defendant claimed, in part, that because of the lost evidence, he was precluded from conducting meaningful cross-examination of the state's witnesses. Id., 421. We concluded that because the court had given the defendant unfettered cross-examination of the witnesses regarding the lost evidence, that any potential prejudice had been cured: "A trial court is not required to take . . . a drastic action, even if the state's failure to preserve evidence has adversely affected the defendant's right to a fair trial. Rather, the trial court may fashion another remedy that appropriately ameliorates or offsets the prejudice that the defendant has suffered as a result of the unavailability of the evidence. . . . [T]he court ameliorated any potential prejudice to the defendant by allowing unfettered cross-examination of the state's witnesses regarding the loss of the evidence and in allowing his closing argument to focus on the state's failure to produce the

requested items that were seized . . . . We conclude that the court's denial of the defendant's motion for a mistrial reflected a sound exercise of its discretion." (Citation omitted; internal quotation marks omitted.) Id., 422.

Similarly, in the present case, any potential prejudice from the loss of the recordings was ameliorated by the court's allowing the defendant unfettered cross-examination of Licausi and D'Amico in addition to allowing the defendant to use, during closing argument, the fact that the tapes were missing in an attempt to raise reasonable doubt in the mind of the jury. Additionally, the court informed counsel that he could argue for further remedies if he thought that unfettered cross-examination was insufficient, and, although the defendant argued that dismissal of all charges was warranted, he never asked for further corrective measures such as an adverse inference instruction or a missing evidence instruction.

For the foregoing reasons, having applied the *Asherman* factors, we conclude that the defendant has failed to demonstrate that his right to due process of law under article first, § 8, of the Connecticut constitution was violated by the failure of the police to preserve evidence, and we further conclude that the court did not abuse its discretion in denying the defendant's motion to dismiss.

## II

The defendant next claims that the court abused its discretion in denying his motion to sever the possession of narcotics charge from the sale of narcotics charges. The defendant argues that although he initially agreed to the joinder of the charges,[8] once he decided to use

---

[8] "[A] person charged with sale of narcotics pursuant to § 21a-278 (b) is presumed not to have been drug-dependent, but may avoid liability under § 21a-278 (b) by proving by a preponderance of the evidence that he was drug-dependent at the time of the offense." *State* v. *Jenkins*, 41 Conn. App. 604, 609, 679 A.2d 3 (1996).

the defense of drug dependency for the sales related charges, he was "required to incriminate himself as to one charge in order to assert a statutory defense to other charges" and that this resulted in substantial injustice.[9] He also argues that severance was required under the *Boscarino* factors. See *State* v. *Boscarino*, 204 Conn. 714, 720–24, 529 A.2d 1260 (1987). The state argues that the court "properly exercised its discretion in denying the defendant's motion to sever because the *Boscarino* factors were satisfied." We agree with the state.

The following additional facts and procedural history are relevant to our analysis. On February 11, 2009, the court granted the state's motion for joinder by agreement. Additionally, the court found that "the informations [were] substantially similar. Most of the charges [were] very close in time . . . [having occurred] at the same location, and [that] most would be admissible . . . as similar acts in separate prosecutions, the exception being [the] one criminal possession of a firearm charge . . . ."

On March 4, 2009, defense counsel filed a motion to sever the possession of narcotics charge from the sale of narcotics charges. The court heard argument the same day. Defense counsel argued that the defendant had a defense to the charges of sale of narcotics by a person who is not drug-dependent, namely, that he *was* drug-dependent. He contended that if the defendant asserted that defense, the defendant necessarily would have to admit to the possession charge. Therefore, he argued, the charges needed to be severed so that the defendant would not have to incriminate himself by asserting his defense. After hearing argument, the court explained that the defendant had not met his burden

---

[9] The defendant specifically concedes that "[t]rial counsel did not assert [that the defendant's] fifth amendment rights were violated, and, according, [the defendant] does not address the issue in this appeal."

of demonstrating that the continued joinder of these charges would result in substantial injustice and that "the *Boscarino* factors simply militate against severing these offenses." The court then went through each of the *Boscarino* factors and applied them to the case at hand, after which it denied the motion for severance. Following the court's denial, the defendant, speaking for himself, stated: "[T]he motion [for] severance, it was the gun case, along with the possession of narcotics case that was [joined] with the sale of narcotics case, those two cases were [joined]. Now, the motion [for] severance was not . . . supposed to be for the possession of narcotics. It was supposed to be for the possession of the firearm. That's what the motion for severance is supposed to be. I get here today, and the motion for severance is something completely different than what we discussed. . . . What we just talked about—this whole motion was irrelevant to what we discussed yesterday. Yesterday, it was about the firearm. It was not about—I never said anything about filing a severance of the possession [charge], Your Honor . . . . It was all the firearm."[10] The court directed the defendant to discuss this further with his attorney, and it denied the motion to sever "only as to the drug charges." The court stated that it would "pass" the matter and leave it open as to whether there would be a motion seeking severance of the firearms charge. However, it does not appear that this issue was raised again.

"The principles that govern our review of a trial court's ruling on a motion for joinder or a motion for severance are well established. Practice Book § 41-19

---

[10] Because the state does not argue that this amounted to a waiver of this issue for appeal purposes, and the parties have not addressed waiver in their briefs, we will not engage in analysis as to whether the defendant's statements were tantamount to a waiver but, instead, will consider the issue on its merits.

provides that, '[t]he judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together.' See also General Statutes § 54-57 ('[w]henever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise'). 'In deciding whether to sever informations joined for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions.' . . . *State* v. *Randolph*, 284 Conn. 328, 337, 933 A.2d 1158 (2007).

" 'Substantial prejudice does not necessarily result from a denial of severance even [if the] evidence of one offense would not have been admissible at a separate trial involving the second offense. . . . Consolidation under such circumstances, however, may expose the defendant to potential prejudice for three reasons: First, when several charges have been made against the defendant, the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him . . . . Second, the jury may have used the evidence of one case to convict the defendant in another case even though that evidence would have been inadmissible at a separate trial. . . . [Third] joinder of cases that are factually similar but legally unconnected . . . present[s] the . . . danger that a defendant will be subjected to the omnipresent risk . . . that although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade

the jury] of the accused's guilt, the sum of it will convince them as to all. . . .

" 'Despite the existence of these risks, this court consistently has recognized a clear presumption in favor of joinder and against severance . . . and, therefore, absent an abuse of discretion . . . will not second guess the considered judgment of the trial court as to the joinder or severance of two or more charges. . . .

" 'The court's discretion regarding joinder, however, is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, we have identified several factors that a trial court should consider in deciding whether a severance may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors [known as the *Boscarino* factors] include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred.' . . . Id., 337–38; see also *State* v. *Boscarino*, supra, 204 Conn. 722–24." *State* v. *Davis*, 286 Conn. 17, 27–29, 942 A.2d 373 (2008).

The transcript reveals that the court carefully considered each of the *Boscarino* factors before ruling on the defendant's motion. As to the first factor, whether the charges involve discrete, easily distinguishable factual scenarios, the defendant argues that this factor weighed in favor of severing the cases because "the charges are easily distinguishable only in theory." He continues: "It is . . . unrealistic to suppose that the jury's decision as to whether [the defendant] was in possession of

crack cocaine during the search of his home would not have been influenced by the fact that, in defense of the charges of sales of crack cocaine by a [person who is not drug-dependent, the defendant] flatly admitted to having been addicted to that very same drug." We do not agree that the charges are not readily distinguishable.

On this factor, we agree with the court's conclusion that the crimes "involve[d] discrete, easily distinguishable factual scenarios, so that the evidence [could] be presented in an orderly manner." The charges involving the sales of narcotics each stemmed from the controlled buys, in which the defendant sold crack cocaine to Licausi. The possession charge stemmed from the execution of the search warrant, when the police found cocaine and marijuana in the defendant's bedroom. The sales charges stemmed from conduct that occurred on March 14 and 26, 2008; the possession charge stemmed from conduct that occurred on April 4, 2008. Accordingly, we agree with the court that the crimes readily were distinguishable and involved discrete factual scenarios.

As to the second factor, whether the crimes were of a violent or shocking nature, the defendant argues that "the prosecutor portrayed [the defendant's] alleged possession of a loaded weapon—as well as his alleged possession of cocaine—as shocking conduct . . . . In short, the prosecutor tied the charge of criminal possession of a firearm to the charge of possession of narcotics as part of an effort to demonize [the defendant] in the minds of the jurors." (Citations omitted.) Although the defendant's argument on this factor focuses on the prosecutor's characterization of the weapons charge, the defendant's claim on appeal involves the court's denial of his motion to sever the sales of narcotics charges from the possession charge; there was no motion made to sever the weapons charge. Furthermore, on the merits of the court's findings on the second factor, namely,

that the drug charges were not violent or shocking, we agree that neither the sales of narcotics charges nor the possession charge were of a violent or shocking nature.

As to the third and final factor, the duration and complexity of the trial, the defendant does not address this factor in his brief. Accordingly, we conclude that he is not challenging the court's finding that the trial was not expected to be long or complex.

Aside from the identified factors set forth in *Boscarino*, which the defendant contends are not exclusive factors, the defendant argues that the court was required to consider the undue prejudice to which he was exposed by not severing these charges. He argues that he was prejudiced because his affirmative defense in the sales of narcotics cases, namely, that he was drug-dependent, necessarily would cause a conviction in the possession case. He argues that he "was required to put on evidence that he was dependent on crack cocaine at the time of the alleged sales in the same trial in which he was accused of possession of crack cocaine at, or at least very near, the same time when the crack cocaine that he was accused of possessing was found. . . . Indeed, if the charges were not consolidated, [the defendant] would not have taken the [witness] stand at all in any case in which he was not tried with sales of narcotics by a [person who was not] drug-dependent . . . ."[11] The state argues that this case is controlled by

---

[11] We note that in this case, Dorothy Eagan, a registered nurse who worked at the APT Foundation, a treatment center for substance abusers, testified on behalf of the defendant. She testified that to take part in the APT Foundation program, a person must be addicted to cocaine. She further testified that the defendant was a participant in the APT Foundation program from August through September, 2007.

The defendant, against the advice of counsel, also testified regarding his alleged drug dependency. The defendant testified, in part, that he met Licausi in October or November, 2007, and that he was addicted to crack cocaine at that time. He stated that Licausi would telephone him to see if the defendant's supplier was at the defendant's house, and then she would come to the house and purchase crack cocaine from the defendant's supplier. The defendant stated that he, himself, never sold crack cocaine to Licausi; it

*State* v. *Jenkins*, 41 Conn. App. 604, 619–21, 679 A.2d 3 (1996). We conclude that the reasoning of *Jenkins* is persuasive.

In *Jenkins*, the defendant was charged with sale of narcotics by a person who was not drug-dependent, sale of narcotics and possession of narcotics. He requested that the court bifurcate the proceedings, arguing that "requiring a defendant to offer evidence on the issue of drug dependency (1) is equivalent to requiring him to testify against himself, and (2) pollutes the objectivity of the jury. The defendant claim[ed] that it [was] unfair to require a defendant to place illegal drugs within his ambit while attempting to defend himself on a sale of narcotics charge. This situation, the defendant argue[d], force[d] him to choose between offering evidence regarding drug dependency, which may prejudice the jury, and remaining silent on the issue of drug dependency." Id., 619.

In considering the merits of the defendant's claim in *Jenkins*, we explained: "In defending a charge of sale of narcotics pursuant to § 21a-278 (b), the defendant may defend on either or both of two grounds: (1) that the state has failed to meet its burden on one of the elements of the offense; or (2) that he was drug-dependent. If the state fails to prove the elements of the

---

was always the supplier who directly sold it to her. He further testified that after Licausi purchased crack cocaine from the defendant's supplier, at the defendant's house, she would break off a piece of the crack cocaine and share it with him. When asked how he supported his addiction, the defendant testified that it was through Licausi's generosity of sharing small pieces of crack cocaine when she purchased it. He stated that he did not have to pay Licausi for the crack cocaine or do anything in return, that she simply gave it him for "the generosity of it . . . ." He also testified that he did not get high when Licausi was not there to give him some of her crack cocaine and that her giving him crack cocaine "was not an everyday thing." When the prosecutor asked him if he needed the crack cocaine everyday because of his alleged addiction, he responded: "No, not regularly. I didn't need it regularly, but if it's there, I'm going to get high."

offense, the defendant will escape liability under § 21a-278 (b). If the state proves the elements of § 21a-278 (b), the defendant may still escape liability under § 21a-278 (b) by proving that he was drug-dependent [at the time he sold the narcotics]. The mere fact that the defendant is faced with a difficult choice regarding whether to present a seemingly inconsistent defense does not mandate a bifurcated hearing." Id. We further explained that this is true especially where "evidence of the defense . . . is not direct evidence of an element of another crime with which the defendant was charged." Id., 620.

Although *Jenkins* can be distinguished on the ground that the crimes involved in that case occurred simultaneously, we are not persuaded that the analysis should be any different in a case, like the present one, in which the crimes occurred on separate dates. The defendant's decision to assert the defense of drug dependency to the charges of sale of narcotics by a person who is not drug-dependent did not provide direct evidence that the defendant possessed drugs on the specific date of April 4, 2008, when the police executed their search warrant. As a matter of fact, the defendant specifically testified that the drugs found on that date were not his.

Our conclusion is further supported by *State* v. *Vasquez*, 53 Conn. App. 661, 733 A.2d 856, cert. denied, 250 Conn. 922, 738 A.2d 662 (1999). In *Vasquez*, the defendant argued that "he had to testify to persuade the jury of his drug dependency . . . [and he] claim[ed] that by so doing he had to admit impliedly to the illegal possession of narcotics, thereby effectively diluting the state's burden of proof on the possession charge." Id., 666. Finding the defendant's argument to be without merit, we stated: "We . . . do not accept the defendant's argument that by putting forth evidence of his drug dependency, he is in effect admitting possession of a narcotic substance; evidence of drug dependency

is not the same as admitting possession at the time of the incident in question." Id., 667.

Similarly, in the present case, the defendant's decision to put on evidence that he was drug-dependent did not equate to an admission that he was in possession of narcotics on April 4, 2008. Furthermore, even if the defendant's defenses to the sales related charges and the possession charge could be considered inconsistent, "[t]he decision of which defenses to present to a jury in a criminal trial is properly left to the judgment and wisdom of the criminal defendant and his attorney. The due process clause of the Fourteenth Amendment does not guarantee one charged with a crime a separate audience for each and every defense he or his counsel may devise. As with many other decisions made prior to and during trial, a wrong choice of defenses may have severe adverse consequences. However, due process is not implicated simply by the fact that such a choice is foisted upon the criminal defendant." (Internal quotation marks omitted.) *State* v. *Jenkins*, supra, 41 Conn. App. 621.

On the basis of the foregoing, we conclude that the court did not abuse its discretion in denying the defendant's motion for severance.

The judgments are affirmed.

In this opinion the other judges concurred.