[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is essentially a breach of contract case wherein the jury rendered a verdict for the plaintiff on two of three counts. The defendants have timely made three motions addressed to the verdict: (1) a motion to set aside the verdict pursuant to P.B. § 320; (2) a motion for judgment in accordance with the defendants' motion for a directed verdict made at the conclusion of the plaintiff's case; and (3) a motion for remittitur.
The first count of the plaintiff's complaint alleges the breach of an employment agreement ("Agreement") because of the failure of the defendants to maintain a profit sharing and money purchase plan (the "Plans") in which the plaintiff was entitled to participate. The second count claims that, pursuant to the Agreement, the defendants were obligated to provide the plaintiff, at no cost to her, a level of medical benefits in effect for her prior to the execution of the Agreement. The third count alleges a breach of Connecticut General Statutes § 31-72
for the failure of the defendants to pay wages.
At the conclusion of the plaintiff's case, the defendants moved for a directed verdict on all three counts, and although the court reserved decision thereon at that time, in its charge to the jury it directed a verdict for the defendants on the third count, failure to pay wages. The plaintiff has made no motion with respect to the third count and therefore the verdict on that count need not be addressed here. CT Page 11218
The following evidence needs to be reviewed in deciding the defendants' motions. The Agreement arose in conjunction with a sale of the plaintiff's company, Pentec, Inc., to the defendants[1], and provided that the plaintiff would continue to be eligible to participate in all pension and profit sharing plans of the new company formed by the defendant Callahan.[2]
It was undisputed that the defendants did in fact terminated the Plans while the plaintiff was employed by Pentec, Inc. The plaintiff testified that she was financially harmed by her inability to shelter income from federal taxes as a result of the termination of the Plans. She argued to the jury that the termination of the Plans was, by virtue of the language of the Agreement, a breach of that Agreement. The defendants presented evidence, by way of the Plans themselves, that by their very terms the defendants had the right to terminate the Plans any time. In fact, the defendant Callahan testified that the Plans were terminated because they no longer complied with Internal Revenue Service requirements for such Plans. The plaintiff received all of her money from the Plans, and "rolled it over" into an Individual Retirement Account ("IRA"), with the same tax benefits.
The Agreement also contained language that the "[E]mployee shall be provided with the same level of medical benefits as previously provided by Pen Tec, Inc., at no cost to her". The second count of the plaintiff's complaint claims a breach of the Agreement because although the plaintiff incurred expenses for breast reduction surgery, and dental bills, the defendants failed to pay them or reimburse her therefor. The defendants' evidence showed that the medical coverage for employees had been changed more than once, and that at the time she incurred these expenses they were not covered by the existing medical plan.
The question of contract interpretation, being a question of the parties' intent, is ordinarily a question of fact. See Bankof Boston v. Scott Real Estate, Inc., 41 Conn. App. 616,673 A.2d 558 (1996). "A contract is to be construed as a whole and all relevant provisions will be considered together . . . In giving meaning to the terms of a contract, we have said that a contract must be construed to effectuate the intent of the contracting parties". (Citations omitted; internal quotation marks omitted.)Tomlinson v. Board of Education, 226 Conn. 704, 722, 629 A.2d 333
(1993); Barnard v. Barnard, 214 Conn. 99, 109, 570 A.2d 690
(1990). If the parties have reduced their Agreement to a writing, CT Page 11219 their intent "is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intent existed in the minds of the parties but what intention is expressed in the language used." (Internal quotation marks omitted). Id., 110.
The contract at issue in this case is an employment contract. It sets forth the; salary of the plaintiff for the period of her employment. It further provides "[A]s additional consideration here under, the company shall take over and administer the pension and welfare programs to which Employee participated while employed by; her corporation, Pen Tec, Inc. . . .". Further language reads "[E]mployee shall continue to be eligible to participate in all pension, profit sharing and similar plans of Company for the benefit of its employees and its executives." The jury could reasonably have found that under the contract language viewed ". . . in the light of the situation of the parties and the circumstances connected with the transaction . . .";Tomlinson v. Board of Education, supra, 226 Conn. 722; the intent of the parties was that the pension and profit sharing plans would not be terminated during the period of plaintiff's employment.[3] The jury was entitled to determine that the option that the company held to terminate the Plans was subservient to the intent of the parties found within the language of the Agreement. The defendants presented testimony of Mr. Callahan that the defendants were required to terminate the Plan because they violated new regulations of the IRS, and therefore the defendants did not breach the Agreement by wrongfully terminating the Plans. The simple answer to this is that the jury was not required to accept Mr. Callahan's testimony as credible or accurate. The witness' testimony was uncorroborated and it remained the province of the jury to accept or reject it, uncontroverted or not. Walshon v.Walshon, 42 Conn. App. 651, 654, 681 A.2d 376 (1996); Stricklandv. Vescovi, 3 Conn. App. 10, 15, 484 A.2d 460 (1984).
The court must view the defendants' challenge to the verdict on the second count in the same light. Although the defendants had the right to change the amount of the benefits payable and the benefits covered, the jury had sufficient evidence as to the circumstances of the parties, and could reasonably have interpreted the Agreement to mean that the medical benefits would be maintained for her for the term of her employment with the company at the same level as before, that is, without restriction CT Page 11220 and at no cost to her. Accordingly, it was proper for the jury to award the plaintiff that portion of her medical bills which they found to be reasonable.
In their motion to set aside the verdict, the defendants also complained of the court's failure to charge the jury in accordance with paragraphs 8, 9, 10, 11 and 12 of the defendants' requested charge. The defendants had neither included any reference to these claims in their memorandum of law, nor argued it orally at the hearing on these motions, and the court treats them as abandoned.
For all of the reasons set forth above, the court denies the defendants' motion to set aside the verdict on the first and second counts, and their motion for judgment in accordance with their motion for a direct verdict.[4]
The defendants also filed a motion for a remittitur on the first count pursuant to Connecticut Statutes § 52-216a, claiming that the verdict of $26,500 is excessive. In presenting her evidence of damages, the plaintiff testified that the defendants' wrongful termination of the Plans caused her to lose the sum of $2,640 in each of two plan years, for a total of $5,280 which she was required to pay in federal income taxes. She also claimed that the defendants refused to allow her to contribute 10% of her $40,000 salary for one year, or, $4,000 to the Plans, and was damaged by that amount. However, the parties had agreed in writing that there would be no contribution made to either the pension plan or the profit sharing plan for the year in question. The plaintiff admitted that she agreed to this understanding when she initialed and signed the written document. There was no other evidence of damages presented by the plaintiff.
The authority of the court to grant a remittitur after a verdict is derived from Connecticut Statutes § 52-216a.[5]
In this case, the only damages which the jury could have found is the sum of $5,280 in payment of federal taxes resulting from the defendants' breach of the Agreement. The plaintiff's claim that the money she could have invested had the Plans not been terminated would have reaped additional profits, was speculative, insufficient, and not substantiated. Her claims that the agreement not to contribute to the Plans was not meant to apply to her $40,000 salary is to no avail. Although ordinarily the question of contract interpretation, being a question of the parties' intent, CT Page 11221 is a question of fact, where there is definitive contract language the determination of what the parties intended by their contractual commitments is a question of law. Bank of Boston v. Scott RealEstate, Inc., 40 Conn. App. 616, 621, 673 A.2d 558 (1996). The Agreement in question is plain and unambiguous, containing definitive language and is subject to only one interpretation; the jury could not have found, in light of the document, that the defendants wrongfully refused to allow her to contribute to the Plans.
The court finds the verdict for the plaintiff on the first count to be excessive as a matter of law, and therefore grants the defendants' motion for remittitur in the amount of $21,220, and upon failure of the plaintiff to remit said amount, the verdict is set aside and a new trial is ordered.
So Ordered.
D'ANDREA, J.