STATE OF CONNECTICUT *v.* ROBERT W. SPILLANE
(SC 16215)

Borden, Norcott, Palmer, Sullivan and Vertefeuille, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument. For supplemental opinion on the defendant's motion for reconsideration and reconsideration en banc, see *State* v. *Spillane*, 257 Conn. 750, 778 A.2d 101 (2001).

Argued October 26, 2000—officially released April 24, 2001

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Rachel Baird*, former assistant state's attorney, for the appellant (state).

*Joel M. Ellis*, with whom was *Donald E. Weisman*, for the appellee (defendant).

*Opinion*

SULLIVAN, J. The defendant, Robert W. Spillane, was convicted, following a jury trial, of the crime of larceny in the third degree in violation of General Statutes § 53a-124 (a).[1] The defendant appealed to the Appellate Court, claiming "that the trial court improperly (1) denied his motion for acquittal at the end of the state's case-in-chief, (2) denied his motion for acquittal at the conclusion of all of the evidence, (3) omitted from its final jury instructions the definition of 'to deprive' or 'to appropriate' as set out in General Statutes § 53a-118[2] and thus failed to instruct the jury about all of the necessary elements of larceny, (4) denied his motion to strike the testimony of the complaining witness, Webster Lewis, (5) refused to instruct the jury concerning the destruction of certain police tapes and (6) refused to give a missing witness instruction for the state's failure to call the wife of the complaining witness to testify. He also claim[ed] for the first time on appeal that the prosecutor's 'improper' argument deprived him of his due process right to a fair trial under the United States and Connecticut constitutions." *State* v. *Spillane*, 54 Conn. App. 201, 203, 737 A.2d 479 (1999). The Appellate Court determined that the trial court improperly omitted the definition of the term "appropriate" set

---

[1] General Statutes § 53a-124 (a) provides in relevant part: "A person is guilty of larceny in the third degree when he commits larceny, as defined in section 53a-119, and: (1) The property consists of a motor vehicle, the value of which is five thousand dollars or less . . . ."

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[2] General Statutes § 53a-118 (a) provides in relevant part: "(4) To 'appropriate' property of another to oneself or a third person means . . . (B) to dispose of the property for the benefit of oneself or a third person. . . ."

forth in § 53a-118 (a) (4) (B) from its instruction to the jury on the elements of larceny. Id., 218–19. The Appellate Court also found that it was reasonably possible that the jury was misled by the trial court's instruction and, therefore, ordered a new trial.[3] Id., 220, 229. We granted the state's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court properly conclude that the trial court's instructions regarding 'appropriate' were constitutionally inadequate?" and (2) "If the answer to the first question is 'yes' was the error harmful?" *State* v. *Spillane*, 251 Conn. 914, 740 A.2d 866 (1999). Although we agree that the trial court should have defined for the jury the term "appropriate," we find the improper instruction to have been harmless, and we therefore reverse the judgment of the Appellate Court.

The jury reasonably could have found the following facts. The defendant operated Walnut Street Services, Inc., a towing company in Hartford. Walnut Street Services, Inc., was authorized by various area businesses, including Mechanics' Savings Bank on Farmington Avenue in Hartford, to tow unauthorized vehicles from their lots during nonbusiness hours.

Around midnight, on April 27, 1996, Webster Lewis parked his car on the street in front of Mechanics' Savings Bank and entered the apartment of his girlfriend, Andrea Gudealm. When Lewis exited the building, he discovered his car was missing. Gudealm called the police from a nearby pay telephone, and the police gave her the telephone numbers of several tow compa-

---

[3] The Appellate Court rejected the defendant's claim that the trial court improperly had denied his motions for acquittal; *State* v. *Spillane*, supra, 54 Conn. App. 210; and his interrelated claims concerning the trial court's refusal to instruct the jury about the destruction of the police tapes and its denial of his motion to strike the testimony of the complaining witness, both of which it considered in the event that they were to arise in the new trial it had ordered. Id., 220–21, 228.

nies. Upon calling the tow companies, Gudealm located Lewis' car at Walnut Street Services, Inc. The following afternoon, Lewis proceeded to Walnut Street Services, Inc., and paid the defendant's wife, Cheryl Spillane, $148 to retrieve his vehicle. Lewis found his glove compartment open, papers scattered around the car and tools missing from the back of the car. Lewis then called the police, and larceny charges were brought against the defendant.

The defendant was tried on two counts of larceny in the third degree in violation of § 53a-124 for the wrongful taking of Lewis' car and his tools respectively, as well as on one count of risk of injury to a child in violation of General Statutes (Rev. to 1995) § 53-21, as amended by No. 95-142, § 1, of the 1995 Public Acts[4] and one count of reckless endangerment in the second degree in violation of General Statutes § 53a-64[5] for an incident that occurred on October 1, 1996. At the close of the state's case, the trial court granted the defendant's motion for judgment of acquittal of the charge of larceny in the third degree with respect to the tools, and the trial continued on the remaining charges of larceny in the third degree stemming from the taking of Lewis' vehicle on April 27, 1996, as well as risk of injury to a child and reckless endangerment in the second degree, both stemming from the October 1, 1996 incident.

Much of the trial testimony addressed where Lewis' car had been parked when it was towed. If it had been parked in the Mechanics' Savings Bank parking lot,

---

[4] General Statutes (Rev. to 1995) § 53-21, as amended by No. 95-142, § 1, of the 1995 Public Acts, provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, [or] the health of such child is likely to be injured . . . shall be guilty of a class C felony."

[5] General Statutes § 53a-64 (a) provides: "A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a risk of physical injury to another person."

Walnut Street Services, Inc., rightfully towed the vehicle. If, however, it had been parked on the street, as the state claimed, then Walnut Street Services, Inc., wrongfully towed the vehicle.[6] In accordance with Lewis' testimony, the jury found the tow to have been wrongful and, on March 20, 1997, found the defendant guilty of larceny in the third degree. The defendant was found not guilty of the charges of reckless endangerment in the second degree and risk of injury to a child. The defendant was sentenced on May 2, 1997, to a two year suspended sentence and three years probation. He was also ordered to pay Lewis restitution in the amount of $200, participate in an anger management program, and donate $1000 to the Hartford police department outreach program. Additional facts will be set forth as necessary.

## I

## JURY INSTRUCTIONS

The state argues that the trial court's instruction to the jury regarding "the intent to . . . appropriate" element of larceny was proper. Section 53a-119 sets forth two different types of intent that may be established to prove larceny: "when, *with intent to deprive another of property* or *to appropriate the same to himself or a third person,* he wrongfully takes, obtains or withholds such property from an owner. . . ." (Emphasis added.) Either intent to deprive *or* intent to appropriate must be found to convict a defendant of larceny. The state proceeded on a theory that the defendant here intended to appropriate Lewis' vehicle.

The first count of the state's information charged the defendant with larceny in the third degree in that the defendant, "with *intent to appropriate* a motor vehicle

---

[6] A private tow company may tow a vehicle parked on a public street only if it has been ticketed by the police. The police had not issued a ticket in this case.

to himself, wrongfully took, obtained and withheld that motor vehicle from the owner." (Emphasis added.) Furthermore, during the trial the state emphasized to the court that it was proceeding under the statutory provision where the defendant acts "with intent to appropriate a motor vehicle to himself." The state then recited the definition of "appropriate" set forth in § 53a-118 (a) (4) (B): " 'to dispose of the property for the benefit of oneself or a third person.' "

Reflecting the specificity of the state's charge, the trial court instructed the jury in relevant part: "Our statute defines larceny as follows: A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself . . . he wrongfully takes, obtains or withholds the property from an owner. Each of the following elements must be proved by the state beyond a reasonable doubt. First, that the defendant wrongfully took, obtained or withheld property from an owner. And second, *that at the time the defendant obtained the property, he intended to appropriate that property to himself or a third person. . . .* The state must prove to you beyond a reasonable doubt that first, [the defendant] wrongfully took, obtained or withheld property from the owner and *at the time he did that, he intended to appropriate the same to himself or a third person.*" (Emphasis added.) In so instructing, the trial court declined to offer the jury the instructions suggested by the defendant.[7] See *State* v. *Leroy,* 232

[7] The defendant, citing D. Borden & L. Orland, 5 Connecticut Practice Series: Criminal Jury Instructions (2d Ed. 1997) §§ 13.1 and 7.1, pp. 606–607, requested the following jury instructions regarding intent to appropriate:

"Insofar as it applies here, larceny in the third degree means that a larceny, which is a theft or stealing of property, has been committed and that the property stolen consisted of a motor vehicle.

"Larceny means theft or stealing. The statute provides that a person commits larceny when, with intent to deprive another of property or to appropriate that property to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner.

"The state must prove that property was taken with the specific intention of depriving the owner (or some other person) of it, or of appropriating it

Conn. 1, 7, 653 A.2d 161 (1995) ("improper jury instruction as to an essential element of the crime charged may result in the violation of the defendant's due process right to a fair trial, and thus require the reversal of a conviction based upon that instruction"). The trial court properly rejected the instruction suggested by the defendant because much of the defendant's suggested

to himself or to some third person. To intend to deprive another of property means, insofar as it applies here, intending to withhold it or cause it to be withheld from him permanently or for so long a time or under such circumstances that the major portion of its economic value or benefit is lost to him, or intending to dispose of the property in such a manner or under such circumstances as to make it unlikely that an owner will recover the property. To intend to appropriate property to oneself or a third person means intending to exercise control over it permanently or for so long a time or under such circumstances as to acquire the major portion of its economic value or benefit, or intending to dispose of the property, for the benefit of oneself or a third person. In other words, the property must have been taken for the purpose of keeping or using it permanently or virtually so, or of disposing of it in such a way as to result in a permanent or virtually permanent loss of the property to the owner. . . .

"It is essential, therefore, that the state prove beyond a reasonable doubt that the person who took the property had this unlawful purpose or intention in his mind at the time the property was taken. In addition to this mental element of the crime, the state must also prove that the property was wrongfully taken from the owner. . . .

"To summarize, then, in order for you to convict the defendant under this count, you must be satisfied beyond a reasonable doubt that the following things have been proven: (1) that the defendant had the intention to deprive another of property or to appropriate it to himself or to someone else; (2) that acting with that intent he wrongfully took, obtained or withheld that property from its owner; and (3) that the property consisted of a motor vehicle.

"In this case, the defendant claims that he was engaged in a legal tow of an illegally parked motor vehicle from private property. The defendant claims that Walnut Street Services, Inc. was authorized to tow motor vehicles from the parking lot in front of [Mechanics' Savings Bank] on Farmington Avenue; that the tow in fact took place from that parking lot; and that the defendant did not have the requisite intent to deprive another of his property.

"If you find that the state has not proven all these elements—intent to deprive or appropriate; wrongful taking, obtaining or withholding; and that the property consisted of a motor vehicle, your verdict would be not guilty on this count. If, however, you do find that the state has proven all these elements, your verdict would be guilty on this count."

instruction addressed the "deprive" prong of the intent element, rather than the "appropriate" prong on which the state was proceeding. See *State* v. *Faust*, 237 Conn. 454, 473, 678 A.2d 910 (1996).

In addition to declining to deliver the defendant's entire requested jury instruction, the trial court refrained from stating to the jury the statutory definition of "appropriate." General Statutes § 53a-118 (a) (4) defines "appropriate" as follows: "(A) to exercise control over it, or to aid a third person to exercise control over it, permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit, or (B) to dispose of the property for the benefit of oneself or a third person." The state was relying on the latter definition, as it emphasized at trial.[8] The defendant contends, however, that if the state meant to proceed only under the "dispose of" prong of the definition of "appropriate," the trial court should have read at least that specific

[8] On March 14, 1997, the state's attorney, in response to the defendant's motion for judgment of acquittal at the close of the state's case, stated: "There are alternates . . . put forth for the state to prove larceny. And in this case, the state chose . . . intent to appropriate a motor vehicle to himself.

"To appropriate, it is defined under section 53a-118 provision four, 'To appropriate property of another to oneself or to a third person means' . . . (B), 'to dispose of the property for the benefit of oneself or a third person.' "

The instructions requested by the defendant; see footnote 7 of this opinion; were overbroad, not only because they included the "deprive" section of the statute, as described previously, but also because they unnecessarily addressed the definition of "appropriate" under § 53a-118 (a) (4) (A), thus attaching a permanency element to the definition of "appropriate" that § 53a-118 (a) (4) (B) does not require. See *State* v. *Wieler*, 35 Conn. App. 566, 580, 645 A.2d 1032 (1994) ("As we stated previously, the defendant's intent permanently to deprive the associations of their property is not an essential element of the offense of larceny by embezzlement. Thus, there is no reasonable possibility that the trial court's refusal to instruct on it misled the jury."), aff'd, 233 Conn. 552, 660 A.2d 740 (1995) (per curiam); contra *State* v. *Kurvin*, 186 Conn. 555, 568, 442 A.2d 1327 (1982) (discussing permanency element with regard to "deprive" prong of larceny statute).

section of the statutory definition to the jury. The state argues that, because the jury was not provided with the definition contained in § 53a-118 (a) (4), it may be presumed that the jury relied on a commonsense or dictionary understanding of the term. Such a definition, the state contends, would be the same for all intents and purposes as the statutory definition.

Although a trial court is not necessarily obligated to instruct the jury as to a statutory definition; see, e.g., *State v. Sinclair*, 197 Conn. 574, 581, 500 A.2d 539 (1985) (failure to provide statutory definition of "intent"); in the interest of clarity, it is generally preferable that the jury be so instructed. Compare *State* v. *Cerilli*, 222 Conn. 556, 567, 610 A.2d 1130 (1992) ("[w]e agree with the defendant that a specific instruction on identification was warranted because his theory of defense was misidentification and because there were sufficient instances of lack of clarity and sufficient inconsistencies in the identification testimony"). It is well established that, when determining the meaning of a word, "it is appropriate to look to the common understanding of the term as expressed in a dictionary." *State v. Indrisano*, 228 Conn. 795, 809, 640 A.2d 986 (1994). This precept, however, pertains primarily to the situation where no statutory definition is available. Id. If the statutory and dictionary definitions are sufficiently similar, the need for the jury to be read the statutory definition is less compelling. See *State v. Mason*, 186 Conn. 574, 586–87, 442 A.2d 1335 (1982); see also *State* v. *Kurvin*, 186 Conn. 555, 562, 442 A.2d 1327 (1982) ("when a word contained in an essential element carries its ordinary meaning, failure to give the statutory definition will not constitute error"); see also *State* v. *Sinclair*, supra, 581 ("the trial court's failure specifically to define intent, at least in the absence of a request or exception by the defendant, was not reversible error because it is not reasonably possible that the jury was

misled as to its meaning"); *State* v. *Maresca*, 173 Conn. 450, 460–61, 377 A.2d 1330 (1977) ("[n]or . . . did the court err in refusing to charge the jury on the statutory definition of the word 'intentionally,' which has not been shown to have been used in anything other than its ordinary meaning").

To determine whether the ordinary meaning of "appropriate" comports with the definition of that term in § 53a-118 (a) (4), we compare the dictionary definition with "to dispose of for the benefit of oneself or a third person." Webster's Third New International Dictionary offers the following definitions of "appropriate": "3a: to make peculiarly the possession of someone . . . b: to claim or use as if by an exclusive or preeminent right . . . 5: to set apart for or assign to a particular purpose or use in exclusion of all others . . . 6: to take without permission . . . ." Although this definition suggests a taking that denies access to others, it does not mention the word "dispose" specifically, nor does it include any mention of the benefit gained for oneself or a third person. Furthermore, the dictionary definition is in a sense too broad because it contains definitions not anticipated by the statute. For example, under "appropriate," the dictionary also lists "to annex," as well as "to assign or attribute" and "to make suitable." Webster's Third New International Dictionary. Although, as the state contends, the dictionary definition of "appropriate" is consistent with the statutory definition, we find it not to be as specific; therefore, it is not accurate to say that the word "appropriate," as presented in § 53a-118 (a) (4) is used in its ordinary sense. Accordingly, we conclude that it was improper in the present case for the trial court to refrain from providing the jury with the statutory definition of "appropriate."

The trial court's improper omission of the statutory definition of "appropriate" from its instructions to the

jury is an issue of constitutional magnitude. Therefore, the burden is on the state to prove harmlessness beyond a reasonable doubt. See, e.g., *United States* v. *Hasting*, 461 U.S. 499, 507–509, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983); *State* v. *Grant*, 6 Conn. App. 24, 27–28, 502 A.2d 945 (1986); see also *State* v. *Cerilli*, supra, 222 Conn. 584 n.16 ("[w]e have equated this constitutionally required formulation of the harmless error standard . . . with our formulation that an instructional constitutional error is harmless if there is no reasonable possibility that the jury was misled" [citation omitted]). "An alleged defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled." *State* v. *Smith*, 194 Conn. 213, 219, 479 A.2d 814 (1984); see also *Neder* v. *United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) ("the test for determining whether a constitutional error is harmless . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" [internal quotation marks omitted]). In performing harmless error analysis, we keep in mind that "[i]n determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Citations omitted; internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995).

In determining whether the jury instruction resulted in harm, it is helpful to look to the complexity of the issues involved. See *State* v. *Lemoine*, 233 Conn. 502,

514–15, 659 A.2d 1194 (1995) ("[i]n assessing whether a jury reasonably could have been misled by the court's instructions . . . it is always proper to consider whether the issues in the case are complicated"); see also, e.g., *State* v. *Cerilli*, supra, 222 Conn. 567 ("We conclude, however, that any . . . instructional lacuna did not constitute reversible error. This is not a case where the conviction turned on the 'uncertain, unclear or inconsistent' eyewitness identification of the defendant . . . . There were sufficient certainties and consistencies in the testimony . . . sufficient evidence corroborating that testimony and strong evidence of consciousness of guilt so that there was no reasonable probability that the jury was misled." [Citation omitted.]); contra *State* v. *Velasco*, 253 Conn. 210, 236, 751 A.2d 800 (2000) ("We are satisfied that, under the facts of this case, the evidence that the defendant utilized a firearm . . . was neither overwhelming nor uncontested. Nor was a finding that the defendant utilized a firearm in the commission of an underlying felony implicit in the guilty verdict returned. We therefore cannot say with confidence that the impropriety did not contribute to the verdict obtained.").

In the present case, the fundamental issue for the jury to decide was whether the defendant towed Lewis' car wrongfully from the street or lawfully from the parking lot; the wrongfulness of the tow was disputed, not whether the defendant disposed of the vehicle for a $148 benefit. The defendant did not contest the evidence that he towed the vehicle; indeed, the defendant's own witnesses corroborated that fact. Similarly, the defendant did not contest the fact that Walnut Street Services, Inc., collected a $148 fee for the return of the vehicle. "In a case . . . where a defendant did not, and apparently could not, bring forth facts contesting the omitted element, answering the question whether the jury verdict would have been the same absent the error

does not fundamentally undermine the purposes of the jury trial guarantee." *Neder* v. *United States*, supra, 527 U.S. 19; see also *State* v. *Scarpiello*, 40 Conn. App. 189, 212, 670 A.2d 856, cert. denied, 236 Conn. 921, 674 A.2d 1327 (1996). Accordingly, we find the improper jury instruction to be harmless beyond a reasonable doubt. See *Neder* v. *United States*, supra, 17 ("where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless").

## II

### THE DEFENDANT'S ALTERNATIVE GROUNDS FOR AFFIRMANCE

### A
### The Waiver Rule

Because the defendant's motion for judgment of acquittal at the close of the state's case was denied as to the larceny charge on which he was ultimately found guilty, he asks us to evaluate the constitutionality of the waiver rule in this case, even though he has not presented us with a complete record for review. The defendant raises this claim as an alternative ground for affirmance of the Appellate Court's reversal of his conviction, and he asks that we go further than the Appellate Court and direct a judgment of acquittal on the larceny count.

"Under the waiver rule, when a motion for acquittal at the close of the state's case is denied, a defendant may not secure appellate review of the trial court's ruling without [forgoing] the right to put on evidence in his or her own behalf. The defendant's sole remedy is to remain silent and, if convicted, to seek reversal

of the conviction because of insufficiency of the state's evidence. If the defendant elects to introduce evidence, the appellate review encompasses the evidence in toto. The defendant then runs the risk that the testimony of defense witnesses will fill an evidentiary gap in the state's case. The waiver rule, therefore, forces the defendant to choose between waiving the right to a defense and waiving the right to put the state to its proof." *State* v. *Rutan*, 194 Conn. 438, 440–41, 479 A.2d 1209 (1984). In *Rutan*, we indicated that, "in an appropriate case, we may well conclude that the denial of a defendant's motion for acquittal at the close of the state's case may be assignable as error on appeal from a conviction, whether or not the defendant has introduced evidence in his or her own behalf." Id., 444. Such an analysis would be inappropriate in the present case, however, because we have not been presented with the complete record of the trial.[9] See, e.g., *State* v. *Ong*, 30 Conn. App. 45, 51, 618 A.2d 583, cert. denied, 225 Conn. 909, 621 A.2d 290 (1993) ("[t]he defendant's brief makes it clear that he deliberately chose not to file a transcript of the trial"). Although the defendant argues that the excluded testimony was relevant only to the charges on which he was acquitted, we will not base our conclusions on the defendant's unsubstantiated representations; the waiver rule requires that we examine the trial in its entirety.[10]

[9] In his transcript request, the defendant specifically excluded the testimony of ten witnesses.

[10] The defendant also contends that, under Practice Book § 63-8, it was the state's responsibility to provide any additional necessary transcripts. The state contends that it was the defendant's responsibility to provide an adequate record for review, citing Practice Book § 61-10. Because it is the defendant who is making the waiver rule argument, it is the defendant's responsibility to provide an adequate record against which his argument may be evaluated. The defendant has not provided such a record here; therefore, we will not examine the constitutionality of the waiver rule in this case, nor will we limit our analysis of the sufficiency of the evidence to the evidence presented in the state's case-in-chief.

## B

### Sufficiency of the Evidence

The defendant argues that the evidence against him was insufficient to support his larceny conviction. As indicated previously, the defendant has not presented us with a complete record. Accordingly, we will not address this claim.

## C

### Intent to Deprive Permanently

The defendant also argues that the judgment of the Appellate Court providing the defendant with a new trial should be affirmed because the trial court did not instruct the jury that, at the time of the taking, the defendant must have intended the taking to be permanent. Such a requirement, however, is not mandated by § 53a-118 (a) (4) (B).

We have previously established that the state's case proceeded under the "intent to appropriate," rather than the "intent to deprive" prong of § 53a-119. Section 53a-118 (a) (4) defines "appropriate" as follows: "(A) to exercise control over [the property], or to aid a third person to exercise control over it, permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit, *or* (B) to dispose of the property for the benefit of oneself or a third person." (Emphasis added.) As indicated previously, the state was proceeding under the definition provided in subparagraph (B). The state did not claim that the defendant intended to keep the vehicle, but rather that the vehicle was improperly towed so that the defendant's company could collect the $148 benefit.

Unlike subparagraph (A), subparagraph (B) contains no permanency element. Accordingly, the trial court acted properly in not instructing the jury on that term.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the defendant's remaining grounds for appeal, i.e., whether the trial court improperly refused to give a missing witness instruction for the state's failure to call the wife of the complaining witness to testify and whether the prosecutor's allegedly improper argument deprived the defendant of his due process right to a fair trial under the United States and Connecticut constitutions.

In this opinion the other justices concurred.