## STATE OF CONNECTICUT *v.* GUALBERTO MARRERO
## (AC 20057)

Lavery, C. J., Schaller and Flynn, Js.

Argued June 1—officially released November 6, 2001

*Cameron Dorman*, special public defender, for the appellant (defendant).

*Toni M. Smith-Rosario*, assistant state's attorney, with whom, on the brief, was *Scott J. Murphy*, state's attorney, and *Brian Preleski*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Gualberto Marrero, appeals from the judgment of conviction, rendered after a jury trial, on count one of the state's information, of sale of a narcotic substance by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[1] and, on count two of the information, of sale of

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution

a controlled substance by a person who is not drug-dependent within 1500 feet of a public housing project in violation of General Statutes (Rev. to 1993) § 21a-278a (b).[2] On appeal, the defendant asserts two claims that were not preserved at trial: (1) that the trial court improperly instructed the jury on the defense of drug dependency by failing to define "drug dependence" according to the statutory definitions contained in General Statutes (Rev. to 1993) § 21a-240 (18) and (19);[3]

---

of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended . . . ."

[2] General Statutes (Rev. to 1993) § 21a-278a (b) provides in relevant part: "Any person who violates section 21a-277 or 21a-278, and who is not, at the time of such action, a drug-dependent person, by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving, or administering to another person any controlled substance in or on, or within one thousand five hundred feet of . . . a public housing project shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. . . ."

That statute was amended by Public Acts 1994, No. 94-233, § 1, to exclude the provision that allows a person who is drug-dependent to raise drug dependency as a defense or exemption from liability to a charged violation of § 21a-278a. Unless otherwise indicated, all references to § 21a-278a (b) are to that subsection as contained in the 1993 revision of the General Statutes.

The defendant also was convicted of one count of possession of narcotics in violation of General Statutes § 21a-279 (a). On appeal, however, he does not challenge his conviction on that charge.

[3] General Statutes (Rev. to 1993) § 21a-240 (18) provides in relevant part: " 'Drug dependence' " means a state of physical or psychic dependence, or both, upon a controlled substance following administration of that controlled substance upon a repeated periodic or continuous basis . . . ."

General Statutes (Rev. to 1993) § 21a-240 (19) provides in relevant part: " 'Drug-dependent person' means any person who has developed a state of psychic or physical dependence, or both, upon a controlled substance following administration of that substance upon a repeated periodic or continuous basis. . . . "

Unless otherwise indicated, all references to General Statutes (Rev. to 1993) § 21a-240 are to that statute as contained in the 1993 revision of the General Statutes. Section 21a-240 since has been amended by Public Acts 1997, No. 97-248, § 5, which revised the definitions in subdivisions (18) and (19), deleted the language "physical or psychic dependence" in subdivision (18) and the language "psychic or physical dependence" in subdivision

and (2) that he met his burden of proving by a preponderance of the evidence that he was drug-dependent at the time of the offenses. We agree with the defendant's first claim. We decline to address the defendant's second claim because our resolution of his first claim is dispositive of his appeal.

The following facts and procedural history are necessary to our resolution of the defendant's appeal. In June, 1993, the Bristol police conducted an undercover operation to investigate drug dealing near a housing project. At trial, two Bristol police officers, who participated in the undercover operation, identified the defendant as the person who sold a piece of crack cocaine to Officer Michael Healey, a plainclothes team member. Healey testified that he recognized the defendant from the alleged sale and knew him from two other undercover drug sales that the defendant had made to him. Another officer, Detective Kevin Hayes, testified that, using binoculars, he had observed the transaction between the defendant and Healey.

In his testimony at trial and in his pretrial statements, the defendant made inconsistent statements concerning his use of drugs. First, as to heroin and cocaine use, the defendant told department of correction personnel that he had been using between seven to twelve "bags" of heroin and five "bags" of cocaine daily. At trial, on cross-examination, he testified that he had exaggerated those amounts for the purpose of receiving medication during his incarceration. Second, during an interview with a drug addiction specialist employed by the department of correction, he denied any heroin use prior to being arrested. He later admitted that he had misled the specialist about the frequency of his drug use, alleg-

(19), statutory alternatives, and deleted the definitional alternative that such physical or psychic dependence resulted from the statutory alternatives of "repeated periodic" or "continuous" use.

ing that he was motivated by his fears that any admission of drug intake would have been used against him at trial. Third, although at trial, on direct examination as to quantity, the defendant claimed that he had been using five to six "bags" of heroin daily, during cross-examination he conceded that he could not tell with precision the daily amount of his drug use. He added that it "depended on the money he had" at the time.

In the defendant's direct testimony, he described withdrawal symptoms upon incarceration because he was "addicted." Those symptoms included nausea, body aches and vomiting. That testimony was consistent with department of correction records, which indicated that medical staff had prescribed for him for three days the drug Vistaril, which commonly is prescribed for both heroin withdrawal and sleeplessness. The conditions of the defendant's parole from a 1992 conviction required him to submit to random urine tests to screen for the presence of drugs. Of the four urine tests given, the defendant failed two, which tested positive for the presence of narcotics.

In the defendant's case-in-chief, Robert Neuman, a drug addiction specialist with the state department of public health and addiction services, testified that the defendant was "drug-dependent" at the time of the defendant's alleged sale and possession, within the meaning of § 21a-240 (18) and (19), and, additionally, that he was "drug-dependent" as that term is defined in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders. Neuman interviewed the defendant on two separate occasions for the purpose of evaluating the extent of the defendant's drug dependency. During the first interview, lasting roughly one hour, the defendant admitted to some cocaine use but denied all heroin use. After discovering that the defendant's denials of his drug use conflicted

with the medical records[4] of the department of correction, Neuman recalled the defendant for a second interview. During the second interview, the defendant admitted to some heroin use but did not commit to having used any precise amount. Neuman did not perform any physical examination of the defendant for track marks or other signs of drug dependency. He nonetheless determined that the defendant was drug-dependent on the basis of the department of correction medical records as well as the two interviews that he had conducted with the defendant.

The court instructed the jury on the main elements of each crime charged. In its charge, the court specifically noted that the jury could convict the defendant under § 21a-278 and § 21a-278a only if it found that he was not drug-dependent. The charge did not define "drug dependency" or "drug-dependent" as those terms are defined by § 21a-240. The court simply stated that the offenses charged must be committed by one "who is not, at the time of such action, a drug-dependent person." The court then went on to instruct the jury about the relevant burdens of proof of both the state and the defendant, noting that the defendant bore the burden of establishing drug dependency by a preponderance of the evidence. The jury returned a verdict of guilty on both counts.

To address the defendant's claims adequately, we first examine the statutory scheme as it existed at the time that the alleged offenses occurred. General Statutes §§ 21a-278 and 21a-278a, by their terms, apply exclusively to one who is not "at the time of such action, a drug-dependent person."[5] "The design and effect of

[4] Although the defendant had told department of correction medical personnel that he had been using between seven and twelve "bags" of heroin on a daily basis prior to his incarceration, he told Neuman that he had not used any heroin.

[5] See footnotes 1 and 2.

§ 21a-278 (b) [and § 21a-278a (b)] is to punish persons who are not drug-dependent and sell narcotics [or controlled substances] more severely than drug-dependent persons who sell [those substances]. The legislature accomplishes this goal by providing for a five year mandatory minimum sentence for those [who are not drug-dependent and who are] convicted under § 21a-278 (b) [and a three year minimum sentence for those convicted under § 21a-278a (b)]." *State* v. *Jenkins*, 41 Conn. App. 604, 607, 679 A.2d 3 (1996).

Although a defendant is presumed to be a person who is not drug-dependent unless and until he or she makes drug dependency an issue, a person charged with violating either § 21a-278 (b) or § 21a-278a (b) may avoid the imposition of the minimum sentences mandated by those statutes by proving by a preponderance of the evidence that he or she was drug-dependent at the time of the offense. Id., 608–609; see also General Statutes § 21a-269. "A drug-dependent person, could, however, be convicted under [General Statutes] § 21a-277 (a), which does not consider drug dependency, but which also does not carry a mandatory minimum sentence." *State* v. *Jenkins*, supra, 41 Conn. App. 607.

With that statutory framework in mind, we now turn to the defendant's claim that the court failed to instruct the jury adequately as to the meaning of the term "drug-dependent person" as that term is used in the statutorily recognized defense against the imposition of enhanced penalties for the drug charges at issue. The defendant claims that because of the court's failure to define drug dependency, the court's charge was an incomplete statement of the law that failed to guide the jury adequately in its duty to apply the law to the facts of the case.

The defendant concedes that he did not properly preserve his claim at trial by making a request to define

the term "drug-dependent" or by taking exception to the lack of definition in the jury charge. He maintains, nonetheless, that his claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, alternatively, the plain error rule of Practice Book § 60-5.

At the outset, we note our standard of review for unpreserved claims of error. Generally, to obtain appellate review for a claim of trial court error, a defendant must raise the issue by objecting at trial. *State* v. *Streater*, 36 Conn. App. 345, 359, 650 A.2d 632 (1994), cert. denied, 232 Conn. 908, 653 A.2d 195 (1995). In the context of flawed jury instructions, the defendant is expected to object "immediately after the conclusion of the charge." (Internal quotation marks omitted.) *State* v. *Snook*, 210 Conn. 244, 270, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989). Only under the "most exceptional circumstances" will an appellate court permit the review of a claim of error that is not so preserved. *State* v. *Evans*, 165 Conn. 61, 69, 327 A.2d 576 (1973).

That standard, although preclusive, serves critical policy objectives. Id. "Otherwise [a defendant] would be permitted to lie by and speculate upon the chances of a verdict" and only raise an issue of error observed during trial in the event that the result is not favorable. Id., 66. The "exceptional circumstances" doctrine creates an incentive to assert claims of error at trial while the court still has the opportunity to correct any error. Id.

We first turn to the defendant's claim that review is warranted under *State* v. *Golding*, supra, 213 Conn. 239–40, because the court's failure to define drug dependency deprived him of his right to establish the statutorily authorized "drug-dependent" person defense and thereby deprived him of his right to a fair trial. Under

*Golding*, a defendant can obtain review of an unpreserved claim "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." Id.

"The first two steps in the *Golding* analysis address the reviewability of the claim, whereas the last two steps address the merits of the claim." *State* v. *Cohens*, 62 Conn. App. 345, 350, 773 A.2d 363, cert. denied, 256 Conn. 918, 774 A.2d 139 (2001). We conclude that the record is adequate for review, satisfying the first step. With regard to the second step, an unpreserved claim of error consisting of the court's failure to instruct the jury on the definition of what constitutes the affirmative defense of drug dependence does not implicate a fundamental constitutional right. "Drug dependency is an affirmative defense to a charged violation [of § 21a-278 (b)]." *Goodrum* v. *Commissioner of Correction*, 63 Conn. App. 297, 313, 776 A.2d 461, cert. denied, 258 Conn. 902, 782 A.2d 136 (2001).

It is true that a criminal defendant enjoys a fundamental right to establish a defense. *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). A state may, however, place the burden of establishing an affirmative defense, by a preponderance of the evidence, on a defendant, as long as the state is not incidentally relieved of its burden of proof for the elements of the crime. See *Patterson* v. *New York*, 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977). "The absence of drug dependency is not an element of the offense of sale of

narcotics by a person who is not drug-dependent in violation of § 21a-278 (b). Rather, [like an affirmative defense] it is an exemption from liability under § 21a-269. . . . Therefore, it [is] not necessary for the state to negate drug dependency, but, rather, the defendant [has] the burden of proving that [he or] she was drug-dependent." (Citation omitted; internal quotation marks omitted.) *State* v. *Denby*, 35 Conn. App. 609, 619, 646 A.2d 909 (1994), aff'd, 235 Conn. 477, 668 A.2d 682 (1995).

An analysis of our case law clearly demonstrates that the failure to charge adequately on an affirmative defense, which does not go to an element of the offense charged,[6] is not considered to be an error of constitutional magnitude. In *State* v. *Preyer*, 198 Conn. 190, 198–99, 502 A.2d 858 (1985), our Supreme Court addressed an unpreserved claim alleging that the trial court had improperly instructed a jury as to the affirmative defense of cohabitation in a sexual assault case. The defendant raised the broad issue of whether the trial court has an affirmative duty to charge the jury, sua sponte, on every defense theory for which there is a foundation in the evidence adduced at trial. Id., 196. The court stated: "While the constitutional law of due process is implicated by a trial court's failure to instruct the jury on the essential elements of the offense on which the conviction rests . . . we have in the past

[6] "Upon a valid claim of self-defense, a defendant is entitled to proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified." (Internal quotation marks omitted.) *State* v. *Lemoine*, 256 Conn. 193, 199, 770 A.2d 491 (2001). In cases in which a defendant claims self-defense, which if proven negates an element of the offense to be proven by the state, "[a]n improper instruction on [that] defense, like an improper instruction on an element of an offense, is of constitutional dimension." (Internal quotation marks omitted.) Id., 198–99; see also *State* v. *Prioleau*, 235 Conn. 274, 283–84, 664 A.2d 743 (1995); *State* v. *Anderson*, 227 Conn. 518, 526, 631 A.2d 1149 (1993).

found no constitutional infirmity in failure to charge on such defenses as entrapment . . . emotional disturbance . . . or alibi." (Citations omitted.) Id., 197. The court determined that "[n]othing in the circumstances [of the] case suggests that a different rule should apply for the defense of cohabitation." Id.

Our Supreme Court has since applied the "rule" from *Preyer* to encompass misinstruction on an affirmative defense. In *State* v. *Foreshaw*, 214 Conn. 540, 546, 572 A.2d 1006 (1990), the court again addressed challenges to improper instructions on affirmative defenses. The court in *Foreshaw*, determined that "[i]mplicit in [our] decision [in *Preyer*] was the conclusion that claims of error pertaining to the inadequacy of instructions on an affirmative defense do not raise a constitutional question." (Internal quotation marks omitted.) Id.

It is true that in *State* v. *Jenkins*, supra, 41 Conn. App. 622, this court stated, in dicta, that an improper charge on the defense of drug dependency, the defense at issue on this appeal, like an improper charge on an element of an offense is an error of "constitutional dimension." The *holdings* of this court and our Supreme Court are, however, to the contrary. See, e.g., *State* v. *Foreshaw*, supra, 214 Conn. 546; *State* v. *Preyer*, supra, 198 Conn. 197; *State* v. *Denby*, supra, 35 Conn. App. 619. An improper instruction on the defense of drug-dependency, "is not of constitutional magnitude." *State* v. *Denby*, supra, 619. In *Denby*, we stated that "[b]ecause the claimed error does not involve an element of the offense . . . [it is not a violation of a fundamental constitutional right]." Id. We therefore conclude that the defendant's claim fails to meet the second prong of the *Golding* standard because it does not allege a claim that is of constitutional magnitude.

We next turn to the defendant's claim that review is warranted under the plain error doctrine. As a preliminary matter, we set out our standard of review for plain

error. Under Practice Book § 60-5, an appellate court "shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . . [but an appellate court] may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." Practice Book § 60-5. "The defendant cannot prevail under . . . [Practice Book § 60-5,] however, unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." *State* v. *Day,* 233 Conn. 813, 849, 661 A.2d 539 (1995). Plain error is reserved for extraordinary situations and "is not even implicated unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) Id.

"We have consistently held that plain error review is necessary where the trial court, in its instruction, overlooks a clearly applicable statute . . . ." (Citations omitted.) *Dionne* v. *Markie,* 38 Conn. App. 852, 856–57, 663 A.2d 420 (1995). Because the court did not instruct the jury on the definition of "drug-dependent person" in § 21a-240 (19), and the statutory definition contains alternative ways of meeting that exemption from enhanced penalties, which cannot be ascertained from the term's ordinary meaning, the jury was left to guess at the meaning.

To prevail on a claim of nonconstitutional plain error, "the defendant must demonstrate that the trial court's improper action likely affected the result of his trial." *State* v. *Day,* supra, 233 Conn. 850. When a court over-looks a statute defining a material term about which the jury is instructed, the likelihood of misleading the jury will depend on whether the statutory term carries its " 'ordinary meaning.' " *State* v. *Spillane,* 255 Conn. 746, 756, 770 A.2d 898 (2001). If the term carries a specific, technical meaning that is beyond common

understanding, the failure to charge as to the substance of the term's statutory definition is harmful error. *State* v. *Grant*, 6 Conn. App. 24, 31–32, 502 A.2d 945 (1986).

Our evaluation of instructional error is a test of "substance rather than form." Id., 28. A court is not obligated to read the exact statutory language of a material definition. *State* v. *Spillane*, supra, 255 Conn. 755. In fact, if the statutory language would confuse the jury, reading it verbatim as part of the instructions is ill advised. *State* v. *Criscuolo*, 159 Conn. 175, 177, 268 A.2d 374 (1970). The court must, however, charge on the substance of the controlling law in a way that the jury can understand. See *State* v. *Wright*, 62 Conn. App. 743, 756, 774 A.2d 1015, cert. denied, 256 Conn. 919, 774 A.2d 142 (2001). The paramount concept in determining the propriety of jury instructions is whether, as a whole, the charge is "accurate in law, adapted to the issues and adequate to guide the jury in reaching a correct verdict." (Internal quotation marks omitted.) *State* v. *Faust*, 237 Conn. 454, 476, 678 A.2d 910 (1996); see also *Lopes* v. *Connecticut Light & Power Co.*, 145 Conn. 313, 315, 142 A.2d 135 (1958) (charging on material law in civil action, which, like drug dependency, requires proof by preponderance of evidence).

The term at issue in this case is "drug-dependent" as it is used in the statutory exclusion from liability for the mandatory minimum sentence under the statutes defining the offenses of which the defendant was convicted. Pursuant to § 21a-240 (18), "drug dependence" is "a state of physical or psychic dependence, or both, upon . . . a repeated periodic or continuous basis . . . ." Pursuant to § 21a-240 (19), a "drug-dependent person," is "any person who has developed a state of psychic or physical dependence, or both, upon . . . a repeated periodic or continuous basis. . . . "

The standard technique to assess the common understanding of a statutory term is to turn to a dictionary

of common usage. *State* v. *Spillane*, supra, 255 Conn. 755. In the case of the term "drug-dependent," that approach is not entirely availing. In Webster's, the terms "drug-dependent" or "drug dependence" are not separately defined. Merriam-Webster's Collegiate Dictionary (10th Ed. 1999). The absence of a separate definition indicates that the term is outside the rubric of common parlance. Within the definition of "dependent," however, Webster's states "affected with a drug dependence" as one of several possible meanings. Id. "Dependence" is, in turn, defined as "the quality or state of being dependent." Id. The meanings are, thus, circular and partially undefined. The most common meaning listed for "dependent" is "determined or conditioned by another contingent." Id.

By contrast, the statutory definition of "drug-dependent person" is a technical term of art with other than intuitive characteristics. As defined in § 21a-240 (19), a "drug-dependent person" is "any person who has developed a state of psychic or physical dependence, or both, upon . . . a repeated periodic or continuous basis. . . ." Absent a charge clearly defining the statutory meaning of "drug-dependent," whether a "periodic" user qualifies as a "drug-dependent person" would be a fruitless tautological debate. "A jury should not be called upon to resolve such an esoteric philosophical question at the expense of the defendant." *State* v. *Fuller*, 199 Conn. 273, 280, 506 A.2d 556 (1986).

The defendant adduced substantial evidence in support of his statutory drug dependence defense that would not necessarily jibe with the jury's common understanding of the term. For example, the defendant testified on both direct and cross-examination that he had used drugs periodically when his finances allowed. While it remained uninformed of the concepts of "periodic" use or "psychic" need as indicators of drug dependency, the jury was presented with evidence in support

of those concepts. It is not our role, on appeal, to pass judgment on the credibility of the defendant's testimony. See *State* v. *Sitkiewicz*, 64 Conn. App. 108, 114–15, 779 A.2d 782, cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001). At the same time, we cannot ignore the fact that the jury in the present case may have found the defendant's testimony to be credible, but, being unaware that "repeated periodic" use as well as "continuous" use qualified as drug dependency, discounted any evidence of periodic use as being inadequate to establish drug dependency. We therefore conclude that without the proper law before them to apply to that evidence, there is a reasonable possibility that the jurors were misled in reaching their verdict. See *State* v. *DeBarros*, 58 Conn. App. 673, 682–83, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000).

The state urges us to consider aspects of the charge that allude to the testimony of a psychological expert, Neuman, who testified that the defendant was "drug-dependent" at the relevant time within the meaning of § 21a-240 (19). In the state's estimation, Neuman's testimony regarding the meaning of drug dependency should be considered in determining whether the jury received a legally sufficient charge on the defense of drug dependency. We do not agree.

It is the function of the court to state the rules of law and to explain the law to be applied to the facts of the case; *State* v. *Scott*, 256 Conn. 517, 527, 779 A.2d 702 (2001); not the expert witnesses who testify at trial. Furthermore, nowhere in its instruction did the court ever charge that the defense expert had defined the material law for the jury to apply. On the contrary, the court underscored Neuman's lack of competency in the function of defining law. In the very first sentence of its charge, the court stated: "Ladies and gentlemen of the jury, you've heard the evidence presented in this case, and it's my duty now to instruct you as to the

law which you are to apply to the facts. . . . Now, it's *exclusively the function of the court to state the rules of law that govern the case . . . .*" (Emphasis added.) Further, regarding Neuman's testimony, the court stated: "*No such testimony is binding upon you, however, and you may disregard such testimony either in whole or in part. . . .* The testimony is entitled to such weight as you find expert's qualifications in this field entitle it to receive . . . and it must be considered by you, but is not controlling upon your judgment." (Emphasis added.) We therefore do not agree that Neuman's testimony as to the meaning of drug dependency sufficed because there was no statutory definitional matrix against which such testimony could be measured. We conclude that the jury was likely to have been misled by the lack of a definition of "drug-dependent person" in arriving at its verdict.

The judgment is reversed only as to the conviction of sale of a narcotic substance by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and sale of a controlled substance by a person who is not drug-dependent within 1500 feet of a public housing project in violation of General Statutes (Rev. to 1993) § 21a-278a (b) and the case is remanded for further proceedings consistent with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.